EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: Samuel Pagán Pagán | 2007 TSPR 151 172 DPR ____ |
| --- | --- |

Número del Caso: CP-2005-21

Fecha: 8 de agosto de 2007

Oficina del Procurador General:

       Lcda. Noemí Rivera De León
       Procuradora General Auxiliar


Abogados de la Parte Querellada:

       Lcdo. Raúl Aponte Sánchez
       Lcdo. Juan Reyes Rodríguez


Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Samuel Pagán Pagán          CP-2005-21      Conducta
                                            Profesional

PER CURIAM

San Juan, Puerto Rico, a 8 de agosto de 2007.

Debemos resolver si constituye una actuación contraria al Código de Ética Profesional que un abogado demore injustificadamente y por un tiempo prolongado la obligación que asumió como parte de un negocio jurídico de llevar al Registro de la Propiedad la correspondiente escritura para su inscripción.

I

El licenciado Samuel Pagán Pagán (en adelante, Pagán Pagán) y su esposa lotificaron, previa aprobación de la Administración de Reglamentos y Permisos, una finca de su propiedad. Asimismo, concedieron una opción de compra sobre uno de los lotes a favor del Sr. Ruperto Román (en adelante,

señor Román) y la Sra. Zoraida Dávila (en adelante, señora Dávila).

Posteriormente, las partes otorgaron ante el notario Efraín López Santiago la correspondiente Escritura de Segregación y Compraventa y la Escritura de Hipoteca en Garantía de Pagaré Hipotecario. En ambas escrituras el señor Román y la señora Dávila comparecieron como esposos. Pagán Pagán se comprometió presentar las mencionadas escrituras al Registro de la Propiedad para su inscripción. Sin embargo, éste retuvo las copias certificadas de las escrituras y, en contravención a lo pactado, no acudió al Registro de la Propiedad.

Posteriormente, la señora Dávila visitó las oficinas de Pagán Pagán alegando que se había cometido un error en la escritura de compraventa al incluir al señor Román como su esposo y no hacer constar que el dinero pagado era privativo de ella. Con el propósito de corregir los errores señalados, se otorgó un Acta Aclaratoria. También en esa ocasión, las partes acordaron que Pagán Pagán presentaría la mencionada acta al Registro de la Propiedad. Sin embargo, Pagán Pagán no lo hizo.

En el año 1994, mediante Certificación de Mensura se corrigió un problema de reducción de cabida de la finca originalmente lotificada. Además, Pagán Pagán y su esposa otorgaron una Escritura de Segregación de la finca originaria en diez lotes, de los cuales uno era el que había sido vendido a la señora Dávila.

En el año 1996, Pagán Pagán presentó al Registro de la Propiedad las copias de la Escritura de Segregación y de la Escritura de Compraventa. Como el precio de la compraventa ya había sido pagado en su totalidad para el año 1989, Pagán Pagán no presentó para la inscripción la copia de la Escritura de Hipoteca otorgada para garantizar dicho pago. En el 2002 el Registrador inscribió la parcela segregada a favor del señor Román y la señora Dávila.

Ese mismo año, la señora Dávila presentó una queja en contra de Pagán Pagán y del notario Efraín López Santiago. Específicamente, la señora Dávila expresó que en las escrituras se incluyó a Román como su esposo y comprador cuando éste sólo la acompañó como testigo. Señaló, además, que en la comparecencia de la escritura se incluyó a la esposa de Pagán Pagán aunque ésta no estaba presente. Con relación a ello, alegó que se había preparado un Acta Aclaratoria corrigiendo algunos de los errores mencionados, a saber, que no estaba casada con Román y que el bien era privativo de ella. Asimismo, arguyó que desde el 1986 Pagán Pagán se había comprometido a llevar al Registro de la Propiedad la Escritura de Compraventa y el Acta Aclaratoria, pero que en el 2002 la transacción todavía no había sido registrada. Finalmente, la señora Dávila alegó que Pagán Pagán le había entregado una minuta de asiento de presentación con fecha del 1996 y que en la misma aún aparecía Román como comprador, a pesar de que ese extremo ya se había corregido mediante la mencionada acta.

En su contestación a la queja, Pagán Pagán alegó que los errores sobre el estado civil y la naturaleza privativa del dinero eran imputables a la señora Dávila, ya que ésta actuó todo el tiempo como si Román fuese su esposo. Sostuvo que la señora Dávila no rectificó esos hechos al momento en que así se hicieron constar en las escrituras, sino que esperó varios años para señalar el error. Pagán Pagán aclaró, además, que su esposa no firmó la escritura frente a los compradores, pero que la había firmado anteriormente ante el notario autorizante, según lo permite la Ley Notarial. En cuanto a su obligación de llevar la escritura al Registro, Pagán Pagán precisó que se trató de una obligación que asumió en calidad de parte del negocio jurídico y que, a pesar de que retuvo las copias hasta que los compradores saldaran la deuda, no presentó las mismas por un problema de reducción de cabida que se corrigió posteriormente. Además, Pagán Pagán adujo que de todas maneras las escrituras no hubieran logrado la inscripción, toda vez que el Registrador la hubiera rechazado hasta que no se resolviera el problema sobre la cabida.

Posteriormente, Pagán Pagán presentó al Registro el Acta Aclaratoria, en la cual se corrigieron los errores de la Escritura de Compraventa a los efectos de que el señor Román y la señora Dávila no eran esposos y que el dinero pagado para la compraventa era privativo de ella. Finalmente, en el 2003 la parcela quedó inscrita como un bien privativo de la señora Dávila.

Luego de evaluar la queja, el Procurador General presentó su Informe recomendando archivar el caso para el

notario Efraín López Santiago. Sin embargo, con respecto a Pagán Pagán, el Procurador General señaló una posible violación al Canon 38. Examinadas las recomendaciones del Procurador General, autorizamos la presentación de la querella contra Pagán Pagán y, posteriormente, designamos a la Lcda. Eliadis Orsini Zayas como Comisionada Especial. A la luz de los hechos arriba indicados, según estipulados por las partes, la Comisionada Especial recomendó el archivo de la querella contra Pagán Pagán o, en la alternativa, una censura. En sus conclusiones, la Comisionada consideró como atenuantes la larga experiencia profesional y la honestidad del abogado, la ausencia de motivos deshonestos y la falta de daños a la querellante o a terceros. Con el beneficio de las posiciones de las partes y del Informe de la Comisionada Especial, procedemos a resolver.

II

Los Cánones de Ética Profesional establecen las pautas mínimas que deben guiar a los miembros de la clase togada en el desempeño de su delicada labor. *In re Filardi Guzmán*, 144 D.P.R. 710 (1998). Por consiguiente, todos los abogados deben actuar a un nivel superior, y no al margen, de lo establecido por los Cánones de Ética Profesional. *In re Nogueras Cartagena*, res. el 28 de marzo de 2000, 2000 T.S.P.R. 55.

Hemos reiterado que cada abogado es un espejo en que se refleja la imagen de la profesión y debe actuar con el más escrupuloso sentido de responsabilidad que impone la función

social que ejerce. *In re Quiñones Ayala*, res. el 30 de junio de 2005, 2005 T.S.P.R. 99.

Por razón de la confianza en él depositada como miembro de la ilustre profesión legal, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe esforzarse al máximo de su capacidad en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales y debe evitar hasta la apariencia de conducta profesional impropia. 4 L.P.R.A., Ap. IX.; *In re Barreto Ríos*, res. el 28 de junio del 2002, 2002 T.S.P.R. 89; *In re: Silvagnoli Collazo*, 154 D.P.R. 533 (2001).

Ciertamente, la apariencia de conducta impropia puede resultar muy perniciosa al respeto de la ciudadanía por sus instituciones de justicia y por la confianza que los clientes depositan en sus abogados. *In re Nogueras Cartagena*, *supra*.

Por otro lado, es norma conocida que le corresponde al Comisionado Especial recibir la prueba y dirimir la evidencia conflictiva. *In re Morales Soto*, 134 D.P.R. 1012 (1994). Como desempeña una función similar al juzgador de instancia, el Comisionado Especial está en mejor posición para aquilatar la prueba testifical y sus determinaciones fácticas merecen nuestra mayor deferencia. *In re Soto López*, 135 D.P.R. 642 (1994). Por lo tanto, aunque este Tribunal no está obligado a aceptar el informe de un Comisionado Especial nombrado para atender una querella contra un abogado, pudiendo adoptar, modificar o rechazar tal informe, de ordinario sostendremos las conclusiones de hecho de un Comisionado Especial salvo que se demuestre prejuicio, parcialidad o error manifiesto.

*In re Morell Corrada*, res. el 5 de marzo de 2003, 2003 T.S.P.R. 34; *In re Soto López*, *supra*.

Visto el derecho aplicable, analicemos los hechos ante nuestra consideración.

### III

Es un hecho indiscutible que la propiedad de la querellante quedó finalmente inscrita después de varios años del momento en que se llevó a cabo el negocio jurídico. Esto se debió a la conducta del querellado, la cual fue contraria a las pautas establecidas por el Canon 38.

Según surge del expediente, Pagán Pagán se comprometió a llevar al Registro de la Propiedad las escrituras de Compraventa y de Hipoteca. Dichas escrituras fueron otorgadas en el 1986, pero no fueron presentadas al Registro de la Propiedad hasta diez años después. El querellado ofrece como explicación para esa dilación que, aunque retuvo las copias de las escrituras hasta que los compradores saldaran el total de la deuda, la razón verdadera es que había un problema de cabida que se corrigió mediante una certificación de mensura. Añade Pagán Pagán que ante esas circunstancias resultaba inútil presentar las escrituras toda vez que las mismas no serían inscritas hasta tanto no se corrigiera el defecto en la cabida de la finca. Ninguna de las razones mencionadas por el querellado justifica su tardanza en cumplir con la obligación que asumió.

En primer lugar, el hecho de que todavía no se había saldado la deuda no es una justificación para no inscribir el negocio jurídico, sobretodo cuando se había otorgado una

escritura de hipoteca a favor de Pagán Pagán precisamente para garantizar el pago de dicha deuda. El no haber presentado la escritura de hipoteca al Registro de la Propiedad tuvo como consecuencia que la hipoteca, cuya inscripción es constitutiva, nunca nació a la vida jurídica. En efecto, eso perjudicaba principalmente a Pagán Pagán, quien era el acreedor hipotecario. Sin embargo, el hecho de no haber presentado la escritura de compraventa perjudicaba a los compradores, toda vez que no había correspondencia entre la realidad registral y la extra-registral sobre la titularidad del bien, lo cual pudo haber dado margen para que surgiera una tercería registral.

Con relación al problema de la cabida, del expediente surge que al momento de concluirse el negocio quedaban aún por cumplirse ciertas formalidades que requiere la ley para este tipo de transacción. Del expediente no surge en qué momento Pagán Pagán se enteró de ello, si lo sabía desde que se concluyó el negocio o si lo conoció en un momento posterior. Independientemente de ello, tan pronto se enteró del problema, Pagán Pagán debió informárselo a los compradores, cosa que no hizo. Además, es un hecho incuestionable que no fue hasta el año 1994 que Pagán Pagán empezó las gestiones pertinentes para lograr la inscripción, cuando encomendó la preparación de la Certificación de Mensura. Fue finalmente en el 1996 que presentó al Registro la Escritura de Compraventa. En todo ese tiempo Pagán Pagán no hizo ninguna gestión, ya sea para corregir el error de cabida o para presentar las escrituras al Registro. Por otra

parte, entendemos que es inaceptable el argumento de Pagán Pagán de que, aun si hubiera presentado las escrituras, las mismas no hubieran sido registradas por el problema en la cabida de la finca. Ciertamente ello no es una excusa para no cumplir con la obligación que asumió.

Por otro lado, entendemos que no se le puede imputar a Pagán Pagán el error en las escrituras sobre el estado civil de la señora Dávila, como tampoco se le puede responsabilizar por no haberse aclarado el carácter privativo del dinero utilizado en la transacción. Sin embargo, Pagán Pagán demostró cierto grado de dejadez al no llevar oportunamente al Registro el acta que corrigió esas circunstancias, atrasando ulteriormente la correcta inscripción de la propiedad como un bien privativo de la señora Dávila.

Aunque somos conscientes que la participación de Pagán Pagán en la transacción fue en calidad de parte en el negocio jurídico y no como abogado o notario, este caso presenta circunstancias particulares. Así, debemos considerar que Pagán Pagán asumió voluntariamente la obligación de llevar al Registro las mencionadas escrituras. Además, no podemos ignorar la gran dejadez que éste demostró al momento de hacer las gestiones pertinentes para corregir los errores de las escrituras y hacer que éstas cumplieran con las formalidades para su inscripción. Como conocedor del derecho, Pagán Pagán sabía o debió saber la importancia que tenía el presentar oportunamente las escrituras en el Registro de la Propiedad para que éstas obtuvieran rango registral y, por supuesto, las consecuencias que tenía el no presentarlas.

Entendemos que, al actuar de esa manera, en las circunstancias particulares de este caso el abogado contravino el Canon 38 de los de Ética Profesional, *supra*. Tomando en consideración la larga experiencia profesional de Pagán Pagán y el hecho de que su actuación, en efecto, no perjudicó a ninguna persona, limitamos nuestra sanción a una amonestación, apercibiéndole para que su conducta en el futuro sea acorde a lo que requieren el honor y la dignidad de la profesión.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Samuel Pagán Pagán          CP-2005-21      Conducta
                                            Profesional

SENTENCIA

San Juan, Puerto Rico, a 8 de agosto de 2007.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntrega de la presente, se dicta sentencia amonestando al Lcdo. Samuel Pagán Pagán y apercibiéndole para que su conducta en el futuro sea acorde a lo que requieren el honor y la dignidad de la profesión.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Rivera Pérez concurre con el resultado sin opinión escrita. El Juez Asociado señor Rebollo López disiente sin opinión escrita. El Juez Asociado señor Fuster Berlingeri no intervino.

Dimarie Alicea Lozada
Secretaria del Tribunal Supremo Interina