EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Jorge A. Irizarry Rodríguez | 2015 TSPR 117 <br><br> 193 DPR \_\_\_\_ |

Número del Caso: CP-2013-26

Fecha: 26 de agosto de 2015

Oficina de la Procuradora General:

      Lcda. Margarita Mercado Echegaray
      Procuradora General

Materia: Conducta Profesional - La suspensión del abogado será efectiva el 4 de septiembre de 2015, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Jorge A. Irizarry Rodríguez

CP-2013-0026    Conducta
Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 26 de agosto de 2015.

Este Tribunal tiene el deber de ejercer sus facultades disciplinarias ante la conducta desafiante, irreverente y destemplada de un abogado que obstinadamente intentó manipular el Sistema de Justicia a su antojo para favorecer sus motivaciones particulares. Reprobamos dichas actuaciones y exhortamos a la comunidad legal a exhibir una conducta de respeto hacia cada uno de los componentes que conforman la Rama Judicial, así como a los compañeros letrados que cumplen con su deber de representar partes que ostentan intereses que le resultan contrarios. Es responsabilidad nuestra impedir atentados dirigidos a menoscabar la

integridad y el orden de la Rama Judicial a la que servimos.

**I**

El 9 de febrero de 2010 admitimos al Lcdo. Jorge A. Irizarry Rodríguez (licenciado Irizarry o Querellado), a la práctica de la profesión legal en nuestra jurisdicción. Este proceso disciplinario inició el 15 de marzo de 2013 con la Queja AB-2013-98 que interpusiera la Sra. Stacy Miosotti Rodríguez Vega (señora Rodríguez o Querellante) en contra del licenciado Irizarry y del Lcdo. Roberto García Cabrera (licenciado García).[1]

En su escrito, la Querellante alegó, en esencia, que el licenciado Irizarry abusó de su título profesional y violó los postulados éticos de la abogacía, al incoar procesos judiciales frívolos en su contra y en contra de varios funcionarios públicos, incluyendo jueces y abogados, con la única intención de hostigarla, perseguirla y perjudicarla. Adujo, además, que la conducta desplegada era en represalia por ésta haberlo denunciado por actos constitutivos de violencia de género.

El Querellado objetó la Queja el 9 de abril de 2013 y negó categóricamente las violaciones éticas a las que hizo alusión la Querellante. Expresó que todas las acciones judiciales presentadas por él, su familia y otras dos personas señaladas en la Queja, correspondían al ejercicio

---

[1]     A fin de salvaguardar la confidencialidad de los procesos, mediante Resolución de 4 de septiembre de 2013 ordenamos tramitar de forma independiente y separada las quejas contra ambos abogados.

legítimo de sus derechos y/o a la denuncia de actos delictivos.

De otra parte, mediante Resolución de 18 de junio de 2013, tomamos conocimiento de una comunicación remitida por la Hon. Sonia I. Vélez Colón, Ex Directora Administrativa de los Tribunales, informando al entonces Juez Presidente, Hon. Federico Hernández Denton, de una situación que había estado afectando la administración del sistema de justicia. Entre otras cosas, nos indicó que el licenciado Irizarry, el licenciado García y el señor Wilkins Román Samot (señor Román) habían atentado contra la integridad de la Rama Judicial. Esto, al demandar a todo juez o funcionario judicial que hubiese tomado una determinación adversa al Querellado en el trámite de los casos suscitados entre éste y la señora Rodríguez. Incorporó a la comunicación varios correos electrónicos enviados a algunos jueces y funcionarios judiciales, a sus direcciones oficiales, en los que solicitaban el traslado de casos que tenían pendientes ante sí y amenazaban con posibles demandas.

Tomamos conocimiento, además, de que los licenciados Irizarry y García, así como el señor Román, habían presentado sobre 53 quejas disciplinarias contra letrados que de alguna manera participaron en los pleitos suscitados entre el Querellado y la señora Rodríguez. Finalmente, nos dimos por enterados del referido efectuado el 17 de mayo de 2013 por la Hon. Gladys G. González

Segarra (Juez González Segarra),[2] para que juzgáramos el proceder ético del licenciado Irizarry en los asuntos civiles J JV2012-0817 y  J JV2012-0981.  A base de ello, referimos las posibles violaciones éticas del licenciado Irizarry a la Oficina de la Procuradora General (Procuradora) para investigación e informe.[3]

La Procuradora rindió su Informe el 28 de agosto de 2013.  El Querellado formuló una oposición categórica al mismo "por contener una relación falsa de hechos y de derecho, inducir a error a este [T]ribunal y constituir conducta delictiva contemplada en los estatutos 18 U.S.C. Sec. 241, 18 U.S.C. Sec. 242 y 18 U.S.C. Secs. 1961-1968".[4] Además, acusó a la Procuradora del delito de encubrimiento y expresó que cualquier omisión o discrepancia en la información provista por ésta en su comparecencia debía ser considerada como una supresión intencional.[5]

Una vez examinados el "Informe de la Oficina de la Procuradora General" (Informe) y la "Réplica a Informe de la Procuradora General", el 16 de septiembre de 2013

---

[2]    Juez Superior en el Tribunal de Primera Instancia, Sala de Ponce.

[3]    En relación al señor Román, surgieron ciertas imputaciones sobre la práctica ilícita de la profesión legal, razón por la que esta Curia hizo el referido correspondiente al Secretario de Justicia.  Resolución de 18 de junio de 2013, pág. 2.

[4]    Réplica al Informe de la Procuradora General del Querellado de 9 de septiembre de 2013, pág. 1.

[5]    Empleando un tono desafiante en su escrito, el Querellado señaló las instancias en las que, a su entender, la Procuradora encubrió ciertos hechos. También, concluyó que el contenido del Informe demostraba prejuicio, parcialidad, y una alteración de hechos que generaba una apariencia de faltas éticas.  Réplica al Informe de la Procuradora General del Querellado de 9 de septiembre de 2013, págs. 1 y 36.

ordenamos a la Procuradora presentar la correspondiente Querella en contra del abogado. En cumplimiento con nuestro mandato, el 30 de octubre de 2013 la Procuradora imputó al licenciado Irizarry violaciones a los Cánones 9, 12, 17, 26, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, Cs. 9, 12, 17, 26, 35 y 38 (2012). Una vez sometida la versión del Querellado,[6] el 20 de diciembre de 2013 designamos a la Hon. Crisanta González Seda, Comisionada Especial (Comisionada) en el proceso disciplinario.

El 27 de diciembre de 2013 la Comisionada señaló una Conferencia con Antelación a la Vista para el 22 de enero de 2014, a las 9:30 de la mañana. También, ordenó a las partes presentar un Informe de Conferencia entre Abogados (Informe de Conferencia), en o antes del 21 de enero de 2014. El Querellado no compareció a esta primera vista, ni realizó las gestiones para presentar el Informe de Conferencia ordenado por la Comisionada.

Llamado el caso para la celebración de la Conferencia con Antelación a la Vista el 22 de enero de 2014, la Comisionada hizo constar que se le entregó copia de una solicitud de transferencia de vista, remitida por correo, por el licenciado Irizarry, la cual fue recibida el día

---

[6] En su respuesta a la Querella, el licenciado Irizarry reprodujo los mismos argumentos empleados en su contestación al Informe de la Procuradora.

antes en la Secretaría de este Tribunal.[7] En dicho documento éste expresó tener dos casos pendientes para la fecha en que la Comisionada pautó la Conferencia. Sin embargo, no unió a la petición evidencia alguna que permitiera a la funcionaria corroborar la veracidad del supuesto conflicto de calendario.[8] Tras una determinación preliminar de ausencia injustificada, la Comisionada dictó una orden de mostrar causa contra el Querellado exigiéndole someter prueba de los alegados señalamientos que motivaron su incomparencia.[9]

Celebrada la audiencia a esos efectos, el 13 de febrero de 2014 el Querellado llegó tarde e incumplió con el requerido.[10] Por consiguiente, la Comisionada dejó pendiente la orden para mostrar causa dando oportunidad para que el licenciado Irizarry sometiera la evidencia requerida, ese mismo día.[11]

---

[7] Según surge del matasellos del servicio postal, el documento se depositó en el correo el viernes, 17 de enero de 2014. Dado a que coincidían tres días no laborables, la moción fue registrada como radicada el martes, 21 de enero de 2014, un día antes de la vista señalada. Nótese que aunque la Comisionada notificó la Orden el 27 de diciembre de 2013, no es hasta días previo a la vista que el Querellado dio a conocer los supuestos conflictos de calendario.

[8] El Querellado no intentó comunicarse con la Secretaría de este Tribunal para dar seguimiento a la disposición de su moción, ni tampoco evidenció las gestiones realizadas a fin de cumplir con la confección del informe de conferencia entre abogados ordenado por la Comisionada. Resolución y Orden de Mostrar Causa, 23 de enero de 2014, pág. 1.

[9] El licenciado Irizarry no contestó la orden para mostrar causa, ni presentó los documentos solicitados en la vista destinada a dicho propósito. Minuta de 13 de febrero de 2014, pág. 6.

[10] Tampoco ofreció justificación para no haber presentado el Informe de Conferencia que les fuera requerido en la *Orden* de 27 de diciembre de 2013.

[11] Ante el incumplimiento del Querellado con lo ordenado en esa fecha, la Procuradora General presentó una moción a tales efectos el 26 de marzo de 2014. Atendida la misma, la Comisionada dictó una Orden el 27 de marzo de

El 25 de febrero de 2014 la Comisionada celebró la Conferencia con Antelación a la Vista Final. Al igual que en la audiencia anterior, el Querellado no estuvo presente la hora ordenada. El Lcdo. Norberto Colón Alvarado compareció en su representación.[12]

En la Vista Final celebrada el 9 de abril de 2014,[13] la Procuradora sometió el caso a base del expediente disciplinario. Solicitó, además, que se tomara conocimiento del contenido de los expedientes de los casos relacionados con la Querella. Por su parte, la defensa del Querellado consistió de su testimonio, su réplica a la Querella, los expedientes judiciales elevados a su solicitud y la copia de la minuta presentada en respuesta a la orden de mostrar causa. El representante legal del Querellado no objetó que la Procuradora sometiera el caso por el expediente de la Querella y que se tomara conocimiento judicial de los expedientes judiciales, a los que se hizo referencia durante el proceso. Sí objetó el Informe de la Procuradora y la Querella, planteando que por ser meras alegaciones las mismas deberían estar sujetas a un desfile de prueba.

---

2014 disponiendo un término de 5 días para que el Querellado sometiera la evidencia requerida para ponderar la veracidad de los planteamientos de su solicitud de transferencia de la vista de 22 de enero de 2014.

[12]     La Comisionada concedió hasta ese mismo día para que el Querellado presentara las minutas requeridas.

[13]     En esa fecha, el Querellado produjo copia de una minuta de un caso criminal con un señalamiento para el **22 de enero de 2014**, a las 2:00 de la tarde. No sometió prueba alguna de señalamiento en conflicto con la vista ordenada por la Comisionada en horas de la mañana. Informe de la Comisionada, págs. 9-10.

Es preciso destacar que en sus respuestas tanto a la Queja, al Informe de la Procuradora, así como a la Querella misma, el licenciado Irizarry negó cada una de las imputaciones éticas en su contra. En su lugar, justificó su proceder con argumentos que esencialmente van dirigidos a cuestionar el trámite y la corrección de las determinaciones judiciales en los casos en que estuvo envuelto.

Para facilitar el análisis del asunto ético ante nuestra consideración, reseñamos por separado el curso relevante de cada uno de los casos judiciales que inciden en este proceso.

**A. Orden de Protección y "Parental Kidnapping" o "Legal Kidnapping"**

La señora Rodríguez sostuvo una relación de pareja con el licenciado Irizarry que duró cerca de cinco años. Producto de esta relación consensual, procrearon una hija (AIIR o la Menor). El 26 de abril de 2012 la Querellante se marchó con la Menor del hogar donde cohabitaba junto al Querellado.[14] Acto seguido, solicitó una orden de protección al amparo de la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, 8 LPRA sec. 601 et seq. (2014) (Ley Núm. 54),[15] alegando daños físicos, temor por daños a sus bienes y grave daño emocional (Caso Núm. JAOP2012-0448).[16]

---

[14]    Éstos residían junto a los padres y el hermano del licenciado Irizarry. Réplica a Informe de la Comisionada, pág. 1.

[15]    Aunque los hechos imputados por infringir la Ley Núm. 54 datan del 2012, citamos el tomo de LPRA de 2014, el cual contiene las enmiendas

El 26 de abril de 2012, tras una vista *ex parte*, el Hon. Luis O. Vélez Vélez, Juez del Tribunal de Primera Instancia, Sala Municipal de Ponce (Juez Vélez Vélez), expidió una *Orden de Protección ex parte*, a favor de la Querellante y señaló vista para el 15 de mayo de 2012, fecha de su vencimiento. Copia de ésta le fue entregada personalmente al licenciado Irizarry el 5 de mayo de 2012.[17]

De otra parte, en respuesta a una solicitud de custodia instada por la Querellante el 4 de mayo de 2012, en el Caso Civil Núm. JAOP2012-0448, el tribunal municipal emitió una *Orden de Protección Enmendada* el 7 de mayo de 2012, otorgándole la custodia provisional de AIIR a la Sra. Rodríguez.

Entretanto, el 30 de abril de 2012 el Querellado presentó una "Petición Urgente de Restitución o Devolución

---

incorporadas por la Ley Núm. 23-2013 a los Artículos 3.1 y 3.3 de la Ley Núm. 54. No obstante, ello no tiene consecuencia alguna, ya que las enmiendas solo tienen el propósito de concederle protección legal a todas las personas sin importar estado civil, orientación sexual, identidad de género o estatus migratorio. Exposición de Motivos, Ley Núm. 23-2013.

[16] Se desprende de la *Orden de Protección Ex Parte* de 26 de abril de 2012, que el día antes la Querellante viró accidentalmente un vaso de agua sobre la computadora del Querellado. Supuestamente, ello provocó que éste la agrediera y la amenazara de muerte. Querella, Ap. 38 y 51.

Por estos mismos hechos, el 5 de mayo de 2012 la Querellante presentó varias denuncias contra el Querellado, en virtud de la Ley Núm. 54 (J1VP2012-01469, J1VP2012-01470 y J1VP2012-1471). Querella, Aps. 146-148. En dicho proceso el Querellado fue representado por el Lcdo. Pablo Colón Santiago. Celebrada la Vista a tenor con la Regla 6 de Procedimiento Criminal, hubo causa para arresto por dos infracciones al Art. 3.1 de la Ley Núm. 54, 8 LPRA sec. 631 (2014) y una infracción al Art. 3.3 de la misma disposición legal, 8 LPRA sec. 632 (2014). Posteriormente, en Vista Preliminar en Alzada se determinó Causa para acusar al licenciado Irizarry por una violación al Art. 3.1 de la Ley Núm. 54. No obstante, el Querellado fue absuelto del delito imputado el 7 de diciembre de 2012. Informe de la Comisionada, pág. 26.

[17] Tres días después, éste fue citado personalmente para la audiencia pautada. Querella, Ap. 57.

de Menor a su Residencia Habitual (*Secuestro Parental de Menor o 'Parental Kidnapping' o 'Legal Kidnapping'*) y de Orden Judicial Prohibiendo la Salida de la Menor del Territorio Constitucional del Estado Libre Asociado de Puerto Rico", ante el Tribunal de Primera Instancia, Sala Superior de Ponce (Caso Núm. JCU2012-0095). Figuraron también como peticionarios, su hermano —el Sr. Luis A. Irizarry Rodríguez—, y sus padres —el Sr. Jorge L. Irizarry Hornedo y la Sra. Hilda Y. Rodríguez Segarra— (padres o matrimonio Irizarry Rodríguez).[18] Aparte de requerir el retorno de la Menor a su hogar, solicitaron una orden prohibiendo su salida de la Isla. Como resultado de las alegaciones de secuestro mencionadas en el escrito, el tribunal de instancia atendió el asunto de forma expedita. En la primera vista, el foro primario ordenó retener a la Menor en nuestra jurisdicción y pautó la vista de seguimiento para el 8 de mayo de 2012.[19] En esta ocasión, la Querellante compareció representada por el Lcdo. Arcelio Maldonado Avilés II (licenciado Maldonado). Luego de que las partes presentaran sus argumentos y el foro de instancia tomara conocimiento de los casos pendientes ante el Tribunal Municipal de Ponce,

---

[18]     Es relevante mencionar que durante el trámite de esta solicitud, el Querellado compareció por derecho propio y como representante legal del resto de los peticionarios mencionados arriba.

[19]     En esta etapa del proceso, el tribunal contó, solamente, con la comparecencia del licenciado Irizarry. Querella, Ap. 45.

desestimó la causa de acción, pero mantuvo su orden de no trasladar a la Menor fuera de Puerto Rico.[20]

Retomando el caso sobre *Orden de Protección* (Civil Núm. JAOP2012-0448), el 11 de mayo de 2012 el licenciado Irizarry interpuso una solicitud de prórroga y aviso formal respecto al derecho de revisión. El tribunal municipal, por medio del Hon. Ángel N. Candelario Cáliz, emitió una Resolución concediéndole la prórroga. No obstante, respecto a la pretensión del Querellado de obtener información de la Querellante y la Menor, denegó la petición y le instruyó a plantear el asunto ante la Sala de Relaciones de Familia del Tribunal Superior. Finalmente, extendió la vigencia de la *Orden de Protección* hasta el 22 de mayo de 2012, fecha para la cual reseñaló la vista. En el expediente consta que ambas partes fueron notificadas de la Resolución y citadas a la vista. El Querellado presentó dos escritos idénticos los días 17 y 18 de mayo de 2012 ante la Sala Municipal del foro de instancia en los que insistió querer conocer la dirección de la Querellante y de la Menor, "cuyo secuestro parental legalizó [el Honorable Tribunal Municipal] el 7 de mayo de 2012".[21]

---

[20]    Conforme a lo anterior, el tribunal de instancia dictó sentencia de conformidad el 23 de mayo de 2012. Del expediente surge que el Querellado y el señor Román presentaron escritos posteriores a la Sentencia. El tribunal de instancia no tuvo nada que proveer, refiriéndolos a su determinación inicial. Queja, Anejo 8.

[21]    Querella, Ap. 65-68.

El 21 de mayo de 2012, el Querellado interpuso un recurso de *certiorari* ante el Tribunal de Apelaciones cuestionando la *Orden de Protección.* En esta ocasión, compareció representado por conducto del licenciado García. Incorporó al recurso una moción en auxilio de jurisdicción y paralización de los procesos. Al día siguiente, el foro apelativo intermedio declaró *No Ha Lugar* la moción en auxilio por incumplir con la Regla 79(E) de su Reglamento, 4 LPRA Ap. XXII-B, R. 79(E) (2012). Además, ordenó la consolidación con otro recurso presentado anteriormente por el licenciado Irizarry sobre la misma controversia.[22] Por consiguiente, concedió un término de diez días a la señora Rodríguez para que se expresara en torno a los méritos del asunto. En ambos recursos, el Querellado hizo imputaciones al foro sentenciador de comunicaciones *ex parte*, certificaciones falsas, secuestro parental, violaciones de derechos fundamentales, desaparición o destrucción del expediente judicial, entre otras. El 29 de junio de 2012, el Tribunal de Apelaciones denegó expedir los recursos consolidados, por no satisfacer los criterios de la Regla 40 del Reglamento del referido tribunal, 4 LPRA Ap. Ap. XXII-B, R. 40 (2012), que justificara su intervención en dicha etapa del proceso.

---

[22] Del expediente surge que el primer recurso de *certiorari* cuestionando la *Orden de Protección ex parte* fue el KLCE201200658, presentado por el licenciado Irizarry el 14 de mayo de 2012. Querella, Ap. 71. El siguiente recurso sobre la misma materia fue presentado apenas siete días después y estuvo identificado como KLCE201200698. Querella, Ap. 76.

Respecto al trámite ordinario del Caso Civil Núm. JAOP2012-0448, el 22 de mayo de 2012 la Hon. Luz Dalisa Fraticelli Alvarado, Jueza de la Sala Municipal de Ponce, dictó una orden para mostrar causa contra el Querellado por su incomparecencia a la vista señalada para ese día.[23] Además, extendió la *Orden de Protección* hasta la audiencia señalada para el 8 de junio de 2012.

El 22 de mayo de 2012 el licenciado Irizarry solicitó la recusación del Juez Vélez Vélez, así como de la Hon. Zoraida Lamboy y el Hon. Ángel D. Candelario Cáliz, todos asignados a la Sala Municipal del foro de instancia de Ponce, quienes habían tenido alguna participación como magistrados en los procedimientos atinentes a la *Orden de Protección* expedida en su contra,[24] y en el proceso criminal por infracciones a la Ley Núm. 54.[25] En esencia, el Querellado les imputó haber actuado con prejuicio y parcialidad durante el trámite de los asuntos judiciales. El 21 de junio de 2012, la Hon. Rosaline Santana Ríos, Juez Superior (Juez Santana Ríos), Tribunal de Primera Instancia, Sala de Ponce, denegó la solicitud de recusación presentada por incumplir con el requisito de

---

[23]     Referente a este señalamiento, surge de los autos copia de una moción urgente en la que el Querellado admitió que compareció a sala junto al licenciado García, a las 9:14 a.m., en lugar de las 8:30 a.m., hora en que fue citado a comparecer.  Ello denota que poseía pleno conocimiento sobre la celebración de la vista.  Réplica a Informe de la Procuradora General, Anejo 4.

[24]     Caso Civil Núm. JAOP2012-0448.

[25]     Denuncias Núm. J1VP2012-1469, J1VP2012-1470 y J1VP2012-1471.

juramentación que impone la Regla 63 de Procedimiento Civil, 32 LPRA Ap. V, R. 63 (2010), y por carecer de argumentos suficientes en Derecho para sostener las alegaciones de parcialidad esgrimidas contra los juzgadores.

Debido a una incomparecencia del Querellado a la audiencia pautada para el 8 de junio de 2012 en el Caso Civil Núm. JAOP2012-0448, el foro municipal extendió la vigencia de la *Orden de Protección* por un año y expidió una orden de arresto en su contra por desacato. De los autos no surge que éste hubiese excusado su ausencia o presentado solicitud alguna para que se reseñalara la vista. Eventualmente, fue absuelto del delito de desacato.

El 14 de septiembre de 2012 el licenciado Irizarry, nuevamente, presentó una solicitud urgente en el caso JAOP2012-0448, requiriendo información confidencial del expediente. Días más tarde, la Juez Santana Ríos rechazó su petición. No obstante, el 12 de octubre de 2012 el licenciado Irizarry presentó una solicitud de relevo de orden en el Caso Civil Núm. JAOP2012-0448, a tenor de la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2 (2012). En el escrito expuso que el 8 de junio de 2012 el tribunal de instancia "emitió ilegalmente una orden de protección contra el demandado […] donde además de restringir su libertad de movimiento lo privó de [la] patria potestad so color de privarlo [de la] custodia de

su única hija […] mediante una comunicación ex parte".[26] Manifestó, además, que fue imputado por desacato y detenido debido a su incomparecencia a una vista para la cual no fue citado.

Adujo que el 8 de junio de 2012 durante la vista preliminar por las supuestas infracciones a la Ley Núm. 54,[27] la Querellante salió de sala y junto a su representante legal comparecieron a la Sala Municipal de Ponce para una vista sobre orden de protección *ex parte*, conociendo que él se encontraba en el proceso criminal y que no había sido citado debidamente. Coligió que la *Orden de Protección* expedida era nula, entre otras cosas, porque: el tribunal "maliciosamente" no dispuso de las relaciones paterno-filiales, lo que constituyó una privación de patria potestad de hecho; la Sra. Rodríguez proveyó datos falsos; el foro actuó sin competencia, mediando la comisión de un delito y su encubrimiento; y en el caso intervinieron cinco jueces distintos sin seguir el proceso proscrito en el ordenamiento para su inhibición o recusación. Finalmente, añadió que como en el proceso penal en su contra por infringir la Ley Núm. 54,[28] hubo una determinación de *No Causa* en Vista Preliminar, no podía subsistir la *Orden de Protección* por los mismos eventos.

---

[26]     Réplica al Informe de la Procuradora General, Anejo 15.

[27]     Denuncias Núm. J1VP2012-1469, J1VP2012-1470 y J1VP2012-1471.

[28]     Denuncias Núm. J1VP2012-1469, J1VP2012-1470 y J1VP2012-1471.

Dicha solicitud fue declarada *No Ha Lugar* el 10 de abril de 2013 por la Juez Santana Ríos.

El 2 de noviembre de 2012 el Juez Vélez Vélez se inhibió de participar en cualquier proceso judicial en el cual el Querellado figurara como parte o abogado. Fundamentó su actuación al amparo del Canon 20 de Ética Judicial, 4 LPRA Ap. IV-B, C.20 (2012).

El 26 de noviembre de 2012 el licenciado Irizarry presentó un documento titulado "Denuncia y Solicitud Urgente de Recusación de la Juez Santana Ríos".[29] En síntesis, manifestó que la togada extendió los términos para la señora Rodríguez oponerse a su moción al amparo de la Regla 49.2 de Procedimiento Civil, *supra*, sin atenerse a lo dispuesto en el ordenamiento procesal; que no surgía que ésta fuera la designada por el Juez Presidente para atender el caso en una sala distinta a la asignada; y que carecía de facultad para atenderlo. En el acápite 8 de su escrito, expresó que la Juez Santana Ríos se "abrogó la facultad [del Juez Vélez Vélez] y a[t]endió de forma rápida y sigilosa una moción urgente de petición de documentos" que el Querellado presentara en el susodicho caso.[30] Asimismo, en el acápite 12 hizo referencia a que

---

[29] En idéntica fecha solicitó la descalificación del licenciado Maldonado por conflicto de interés. En el documento, además de incriminar de delito al abogado de la Querellante, informó un supuesto conflicto de interés por una acción judicial que él mismo incoara en representación de AIIR. Querella, Ap. 120. Es importante relatar que seis días previos a la antedicha petición, el 20 de noviembre de 2012, el señor Román presentó una Queja ante esta Curia contra el licenciado Maldonado haciéndole imputaciones similares a las previamente reseñadas. Querella, Ap. 121-122.

[30] Querella, Ap. 124.

la funcionaria, actuando como Jueza Administradora Regional Interina, "declaró falsa y fraudulentamente" sobre la inexistencia de unas notas o minutas en el expediente del caso sobre *Orden de Protección*.[31] En el acápite 18, plasmó que la Jueza era su "testigo hostil o no (por ser [su] testigo estrella) en el caso de daños y perjuicios por comisión de delito contra el Juez Vélez Vélez (GDP2012-0154), el cual data de sus actuaciones ilícitas [d]el 8 de junio de 2012".[32]

Tras estudiar la petición del Querellado en contra de la Juez Santana Ríos, el tribunal de instancia, por medio de la Hon. Nereida Cortés González, Jueza Administradora de la Región de Ponce (Juez Cortés González), la declaró No Ha Lugar el 17 de diciembre de 2012. Concluyó que las alegaciones del licenciado Irizarry no aludieron a instancias específicas en las cuales la Juez Santana Ríos hubiese actuado impropiamente y tampoco que sustentara con hechos específicos sus imputaciones de fraude y falsedad dirigidas a la juzgadora. Destacó, además, que las alegaciones del Querellado versaron sobre incidentes procesales que ocurrieron en el manejo y trámite de los

---

[31]    Querella, Ap. 125.

[32]    Querella, Ap. 126.

En el párrafo número 19 de este mismo documento, el Querellado hizo referencia a que la Juez Santana Ríos fue demandada por el señor Román por su intervención impropia en un caso de *Mandamus* del cual éste expresó ser su testigo contrario.

procesos judiciales atinentes a las órdenes de protección.[33]

El licenciado Irizarry, junto a sus padres, al licenciado García y al señor Román, comparecieron en el Caso Civil Núm. JAOP2012-0448 el 28 de diciembre de 2012 solicitando una orden de protección urgente a beneficio de la menor AIIR. La Juez Cortés González dispuso *Nada que Proveer* y proscribió la comparecencia de quienes no eran partes en el proceso.[34]

**B. Petición al Amparo de la Ley Núm. 140[35]**

A solicitud de la señora Rodríguez, el 30 de julio de 2012 el Tribunal de Primera Instancia, Sala Municipal de Sabana Grande, por medio de la Hon. Imghard del Toro Morales, dictó una *Orden Recoger Pertenencias* en virtud de la Ley Núm. 140 sobre Controversias y Estados Provisionales de Derecho en el Caso Civil Núm. Q12-128. Con la misma, la Querellante recogería en la residencia de los padres del Querellado —donde había convivido con el licenciado Irizarry— las pertenencias enumeradas en el

---

[33]     El licenciado Irizarry sometió una moción de reconsideración en la que reprodujo un lenguaje similar al de su escrito original para expresar su oposición a la decisión judicial, atribuyéndole fraude, **encubrimiento** y violaciones al ordenamiento jurídico y a los derechos procesales por parte de las Juezas Santana Ríos y Cortés González. *Informe de la Comisionada Especial*, págs. 26-27.

[34]     Una solicitud análoga fue presentada por estas mismas personas en la controversia entre el Querellado y la Querellante sobre Alimentos y Custodia, Caso Civil Núm. ISRF201200854.

[35]     Ley Núm. 140 de 23 de julio de 1974, según enmendada, 32 LPRA sec. 2871 *et seq.* (2004 y Supl. 2014) (Ley Núm. 140).

El licenciado Irizarry compareció en este caso por derecho propio y en representación de su padre y del licenciado García. Queja, Anejo 5 (III), pág. 2.

propio documento, incluyendo ropa, documentos personales y juguetes. De los autos surge que el 20 de agosto de 2012 la Querellante presentó una segunda solicitud en el Tribunal de Primera Instancia, Sala Superior de Mayagüez, Caso Civil Núm. Q12-157,[36] ya que cuando la Policía intentó diligenciar la orden anterior, dirigida únicamente contra el Querellado, se le negó acceso al lugar. Ante la inhibición de la Hon. Lynette Ortiz, el caso fue atendido por la Hon. Angie Acosta Irizarry, Juez Municipal (Juez Acosta Irizarry).[37]

En una vista señalada para atender los casos de referencia (Núm. Q12-128 y Q12-157), el tribunal municipal, por medio de la Juez Acosta Irizarry, tras percatarse que tanto el Querellado, como su padre y el licenciado García no fueron citados adecuadamente, intentó comunicarse con éstos desde sala para establecer una fecha hábil. Esta actuación ocasionó que el Querellado, y otras personas cercanas a él, presentaran una serie de acciones judiciales, así como éticas, contra esta juez y otros funcionarios judiciales. La inhibición de la Juez Acosta Irizarry se dio luego de que el Querellado la acusara de sostener comunicaciones *ex parte* durante el proceso. El

---

[36] Esta Querella se unió a la anterior, Núm. Q-12-128.

[37] De los autos del caso no se desprende el motivo específico de la abstención de la Hon. Lynette Ortiz. Sin embargo, consta que fue demandada por el licenciado Irizarry en una fecha posterior muy cercana a su determinación.

caso fue asignado entonces, el 9 de noviembre de 2012, a la Hon. Lucy I. Rivera Doncell (Juez Rivera Doncell).[38]

En la vista señalada para el 6 de febrero de 2013 sobre estos mismos asuntos, el Querellado —aparte de llegar tarde— desplegó una conducta indecorosa y desafiante en corte abierta, solicitando la inhibición de la funcionaria judicial, e imputándole fraude al tribunal, delito y faltas éticas.[39] También atribuyó faltas éticas al licenciado Maldonado, abogado de la Querellante, y emprendió acciones civiles en su contra.[40]

### C. Casos de Alimentos y Custodia

El 12 de junio de 2012 la señora Rodríguez, por conducto del licenciado Maldonado, reclamó alimentos al Querellado en el Tribunal de Primera Instancia, Sala Superior de Mayagüez (Civil Núm. ISRF201200854). Acogida la recomendación de la Oficial Examinadora a cargo del caso, el 24 de agosto de 2012 el foro de instancia ordenó al licenciado Irizarry el pago de una suma mensual a beneficio de su hija. Subsiguientemente, éste inició una

---

[38]    Es relevante destacar que la Resolución menciona las múltiples peticiones de transferencia de vista presentadas por el licenciado Irizarry, aduciendo señalamientos conflictivos. Dos solicitudes a estos efectos, presentadas el 22 de enero de 2013 fueron denegadas, ya que la vista que supuestamente estaba en conflicto era en horas de la mañana y el caso fue citado para la tarde. Queja, Anejo 5 (III), págs. 2-3. La vista de 22 de enero de 2013 no pudo celebrarse ante la incomparecencia del Querellado. Íd.

[39]    En los autos consta una Orden emitida el 28 de febrero de 2013 en la que a solicitud de la señora Rodríguez, por conducto de su abogado, se le ordenó tanto al Querellado como a su progenitor mostrar causa por la cual no debía ser encontrado incurso en desacato por su incumplimiento con la Orden emitida por el Tribunal el 11 de febrero de 2013 sobre el recogido de pertenencias de la Querellante. Queja, Anejo 5 (II).

[40]    Para el detalle, véase la exposición de la parte II-E de esta Opinión.

reclamación judicial en daños y perjuicios en contra de la Oficial Examinadora, quien tuvo que inhibirse del proceso. Ello provocó la dilación de la vista final de pensión alimentaria.[41]

El 5 de octubre de 2012, el Querellado, por sí y en representación de su hija AIIR, así como sus padres, por sí y en representación de su nieta, presentaron un recurso de *Habeas Corpus* contra la señora Rodríguez en el Tribunal de Primera Instancia, Sala Superior de Yauco.[42]  Luego de que el caso fuese trasladado a la Sala Superior de Mayagüez e identificado con el Núm. ISRF201201461, el 10 de octubre de 2012 la Hon. Marta J. Marchany Justiniano, Juez Superior (Juez Marchany Justiniano), resolvió que por tratarse de un pleito de custodia no se justificaba el curso extraordinario de un *Habeas Corpus*.  Por consiguiente, ordenó tramitarse por la vía ordinaria y consolidarlo con el pleito Núm. ISRF201200854, sobre Alimentos, presentado previamente por la señora Rodríguez. Los casos fueron asignados al Hon. Edwin Nieves Troche, Juez de la Sala Superior de Mayagüez (Juez Nieves Troche).

Así las cosas, el 27 de noviembre de 2012 el Querellado presentó un escrito solicitando la recusación del Juez Nieves Troche, alegando, entre otras cosas, que había iniciado una acción civil en contra de éste (Civil

---

[41]     La vista fue recalendarizada para el 22 de enero de 2013.

[42]     Como se desprende de los documentos que constan en autos, el licenciado Irizarry compareció en este asunto por derecho propio y representando a sus padres, como peticionarios.

Núm. JDP2012-0462).**43**    Además, imputó al juzgador violaciones éticas e infracciones a leyes estatales y federales.  El licenciado Irizarry reprodujo una moción idéntica el 4 de diciembre de 2012, la cual fue denegada el 20 de diciembre de 2012 por el propio juez.  El Querellado solicitó la reconsideración del dictamen el 11 de enero de 2013.  El Juez Nieves Troche proveyó *Ha Lugar* al escrito en reconsideración y refirió el asunto a la Hon. Aixa Rosado Pietri, Jueza Administradora en la Región Judicial de Mayagüez (Jueza Rosado Pietri).  Atendida la reconsideración, el 12 de febrero de 2013 el foro de instancia declaró *Ha Lugar* la petición de recusación y asignó los casos a la Juez Rivera Doncell.

El 13 de marzo de 2013, el Querellado interpuso una solicitud urgente de orden de protección a favor de su hija AIIR, en virtud de la Ley para la Seguridad, Bienestar y Protección de Menores, 8 LPRA sec. 1101 et seq. (2014), en los casos consolidados sobre Alimentos y Custodia.  Éste compareció por derecho propio y en representación de sus padres, el matrimonio Irizarry Rodríguez.  Alegó que la Menor estaba "legalmente secuestrada" desde el 8 de junio de 2012, mediante vista *ex parte*; que la Juez Rivera Doncell incurrió en negligencia institucional y maltrato emocional contra la Menor; y que de esta manera la juzgadora quebrantó los

---

**43**    Consta en autos que el caso contra el Juez Nieves Troche fue presentado el 22 de octubre de 2012 y acumuló a múltiples funcionarios judiciales.  Para detalles adicionales, véase el escolio número 55.

derechos fundamentales de AIIR.  El licenciado Irizarry denominó los supuestos actos de maltrato institucional como "terrorismo judicial del Estado".[44]  Cuestionó las decisiones de la Juez Rivera Doncell y las calificó de fraudulentas e ilegales.

El 19 de marzo de 2013, la Juez Rivera Doncell denegó la petición por no contener fundamento suficiente en Derecho.  Asimismo, descalificó al Querellado como abogado en el proceso y ordenó que tanto él como sus padres, deberían comparecer en el plazo de 30 días por medio de representación legal.

A dos días de emitirse el antedicho dictamen, el 21 de marzo de 2013, el tribunal celebró una vista de desacato en el Caso Civil Núm. ISRF201200854 por alimentos dejados de pagar.  Dicha vista fue presidida por la Juez Rivera Doncell.  Según surge en la propia minuta, durante el proceso el Querellado adoptó una actitud irrespetuosa y amenazante contra la juzgadora.[45]  Expuso para récord que estaba presentando una "moción bajo la Regla 49, relevo de orden por fraude y solicit[ó] se consider[ara] su comparecencia de forma como un aviso de demanda".[46]  El

---

[44]     Querella, Ap. 185.

[45]     Querella, Ap. 190-191.

[46]     Querella, Ap. 191.  Es relevante mencionar, que ese mismo día el licenciado Irizarry presentó una "Solicitud de Traslado por Petición de Orden de Protección contra Lucy I. Rivera Doncell (Falta de Competencia)". Querella, Ap. 192.  En la comparecencia de su escrito, manifestó lo siguiente: "Comparece la parte acusada de Desacato por Lucy I. Rivera Doncell, por conducto de su representante legal […]".  Íd.  No obstante, la misma está suscrita por el propio licenciado Irizarry.  En la segunda alegación expresó que "ha tenido que presentar una petición de orden de protección contra Lucy

tribunal denegó sus peticiones y reseñaló la vista para el mes de mayo.[47]

El 10 de mayo de 2013, la Juez Rosado Pietri emitió la Orden Administrativa Número 32, mediante la cual se inhibió voluntariamente de intervenir en todo asunto concerniente al Querellado, sus padres, el licenciado García y el señor Román. Refirió los asuntos a la atención de las juezas, Hon. Carmen T. Lugo Irizarry (Juez Lugo Irizarry), o en su defecto, a la Hon. María I. Negrón García.

Debido a la demanda interpuesta por el licenciado Irizarry en su contra, el 13 de mayo de 2013 la Juez Rivera Doncell emitió una Resolución indicando que, a iniciativa propia, se inhibía de actuar en el caso ISRF201200854 sobre Alimentos de la Menor. En vista de ello, el 15 de mayo de 2013 la Juez Lugo Irizarry, asignó los casos a la Juez Marchany Justiniano, la única de los tres jueces de la Sala de Familia del Centro Judicial de Mayagüez que no estaba inhibida a ese momento. No obstante, ese mismo día la Juez Marchany Justiniano se inhibió porque fue demandada por el licenciado Irizarry. No existiendo en ese tribunal otros jueces en la Sala de Familia a quienes delegar los casos, estos fueron

---

I. Rivera Doncell", refiriéndose a la Juez Rivera Doncell. Íd. Al igual que en otras instancias, el Querellado arremetió en contra de la Juez Rivera Doncell, imputándole violaciones éticas y conducta criminal. Imputó a la Juez, entre otra conducta, haber incurrido en falsedad ideológica y celebrar una vista *ex parte* el 30 de enero de 2013.

[47] Dicha vista fue pautada para el 16 de mayo de 2013 con el objetivo de concederle oportunidad al Querellado y a sus padres de acudir con abogado.

asignados a la Hon. Maura Santiago Ducós, Juez Superior (Juez Santiago Ducós).

Celebrada la vista de desacato en el caso sobre Alimentos el 16 mayo de 2013 (Civil Núm. ISRF201200854), tanto el Querellado, como sus padres, acudieron al proceso *sin re*presentación legal. Ello provocó que el foro de instancia les otorgara un término final de veinte días para comparecer mediante representación legal. En la Minuta de la audiencia consta que finalizando la misma, el tribunal tuvo que requerirle al Querellado que guardara "sus expresiones corporales y el respeto que [ese] foro merece".[48]

La Juez Santiago Ducós dictó una *Resolución y Orden*, respecto a los casos consolidados. Archivó la acción por desacato atinente al Caso Civil Núm. ISRF201200854 donde se alegó falta de pago de los alimentos. De otro lado, en el Caso Civil Núm. ISRF201201461, concedió un plazo de diez días a los abuelos de la Menor para que manifestaran su interés de continuar promoviendo una solicitud de custodia contra los padres de ésta. Añadió, para finalizar, que:

> [E]xisten una serie de mociones que envuelven asuntos fuera de la jurisdicción y competencia de esta sala, incluso **asuntos para los cuales existen procedimientos y acciones disponibles al promovente.** Se le advierte con arreglo a la Regla 9.3 y los Cánones de Ética Profesional que **deben evitarse estas comparecencias que provocan dilación en la tramitación de la acción que nos ocupa. La parte debe agotar los procedimientos adecuados en Ley para obtener los remedios a los que**

---

[48]    Querella, Ap. 207-208.

**entienda tiene derecho.**[49]   (Énfasis suplido).  Querella, Aps. 210-211.

### D. Acciones contra el Lcdo. Maldonado

El 12 de septiembre de 2012 el licenciado Irizarry presentó una demanda por daños y perjuicios, por sí y en representación de su hija AIIR, contra el licenciado Maldonado, por falsedad ideológica y presentar datos falsos con la intención de defraudar y lograr que fueran archivados, registrados o anotados en una dependencia del Estado.   Alegó que el representante legal de la Querellante logró la adjudicación de la custodia a favor de la madre de manera ilegal, catalogándola como "*Parental Legal Kidnapping*".[50]   La acción instada se identificó como el Caso Núm. JDP2012-0389.

Más adelante, el 9 de enero de 2013, el licenciado Irizarry, junto a su hermano, sus padres y el licenciado García presentaron contra la Querellante y su abogado, el licenciado Maldonado, la acción civil Núm. LDP2013-0002 sobre Delito y Fraude de Ley, en el Tribunal de Primera Instancia, Sala Superior de Utuado.   En esencia, éstos adujeron que la señora Rodríguez, con la asistencia del licenciado Maldonado, había obtenido una orden judicial en

---

[49]    En el expediente constan varias comparecencias del señor Román en los casos consolidados sobre Alimentos y Custodia, sin éste ser parte en los mismos.  Aunque solicitó comparecer como *Amicus Curiae*, esto le fue denegado el 12 de febrero de 2013.  Querella, Ap. 288-294.

[50]    Queja, Anejo 11 (II).  Cabe destacar que en esa misma fecha el Querellado presentó una solicitud de descalificación contra el licenciado Maldonado en el caso de Alimentos, ISRF201200854.  Sin embargo, el 27 de noviembre de 2012 reprodujo, nuevamente, idéntica petición en el referido caso.  El 30 de enero de 2013 reiteró su petición de descalificación en todos los casos en que el licenciado Maldonado representaba a la señora Rodríguez.

"fraude de ley" en los casos Q12-128 y Q12-157 sobre Ley Núm. 140, para penetrar a una casa en posesión de los padres y el hermano del Querellado mediante engaño, con la intención de apropiarse ilegalmente de bienes propiedad de terceros.[51]

El Querellado en unión a sus padres, el licenciado García y el señor Román presentaron un total de <u>dieciséis quejas</u> contra el licenciado Maldonado durante el periodo del 21 de noviembre de 2012 al 5 de marzo de 2013, las cuales fueron consolidadas por este Tribunal.[52]   La Procuradora recomendó su archivo por entender que carecían de alegaciones específicas, y que fueron presentadas en común acuerdo para causar presión indebida e incidir en los procesos judiciales entre el Querellado y la señora Rodríguez.   Catalogó las actuaciones de estas personas como abuso de los procesos disciplinarios.   Por consiguiente, el 25 de septiembre de 2014 ordenamos el archivo de las quejas presentadas contra el letrado.

### E. Solicitud de Recusación en Procedimiento de Declaración de Incapacidad y Tutela de la señora Reneé Negrón Serrá

Además de los asuntos anteriores en que el licenciado Irizarry tenía interés como parte, se refirió a

---

[51]     Queja, Anejo 9. En relación a este caso, luego de haberse trasladado el asunto al foro de instancia de Ponce (Civil Núm. JDP2013-195), por falta de competencia, dicho foro dictó Sentencia desestimando con perjuicio, por decretarse la nulidad de los emplazamientos.   El Tribunal de Apelaciones modificó la Sentencia a los fines de que la desestimación fuese sin perjuicio. Así modificada, la confirmó.   Sentencia del Tribunal de Apelaciones, recurso Núm. KLAN201400589, resuelto el 11 de julio de 2014.

[52]     Las quejas fueron identificadas como: AB-2012-0455, AB-2013-0049, AB-2013-113 a la AB-2013-117 y AB2013-124 a la AB-2013-132.

nuestra atención la participación del Querellado en los casos consolidados sobre Declaración de Incapacidad y Tutela (Casos Núm. JJV2012-0817 y JJV2012-0981), pendientes en el Tribunal de Primera Instancia, Sala Superior de Ponce, ante la consideración de la Juez Santana Ríos, para que evaluáramos su proceder ético. A través de estos recursos los hermanos Luis G. Méndez Negrón (señor Méndez) y Doris Méndez (señora Méndez) solicitaron individualmente la tutela de su progenitora, la señora Reneé Negrón Serrá. El 14 de mayo de 2013 el Querellado y el Lcdo. Eric Pijuán Torres (licenciado Pijuán), abogado de la señora Méndez, presentaron una moción en sala para permitir al licenciado Irizarry unirse como representante legal en el pleito. En dicho escrito, suscrito por ambos abogados, solicitaron, además, citar a la Srta. Irenita Fuster Santana (señorita Fuster), hija de la Juez Santana Ríos, "en calidad de testigo hostil de la defensa y de reputación de su núcleo familiar".[53]  Ese mismo día, sin haber sido aceptado aun como representante legal de la señora Méndez, el licenciado Irizarry suscribió una moción requiriendo la recusación de la Juez Santana Ríos debido a que: la hija de la Juez había sido citada como testigo, y luego de haber escuchado la regrabación de una vista celebrada el 11 de diciembre de 2012, calificada como *ex parte*, la actuación de la

---

[53]      Querella, Ap. 233.  Se hace constar que la Juez Santana Ríos había intervenido, previamente, en el caso sobre *Orden de Protección* contra el Querellado.  Querella, Ap. 38-46.

juzgadora violaba el Canon 12 del Código de Ética Judicial, 4 LPRA Ap. IV-B, C. 12 (2012).[54] Durante la vista, la juzgadora no aceptó la participación del licenciado Irizarry como abogado de la señora Méndez, a tenor con la Regla 63.2(d) de Procedimiento Civil, 32 LPRA Ap. V, R. 63.2(d) (2010). Por otro lado, las partes argumentaron sobre la pertinencia del testimonio de la señorita Fuster (hija de la Juez Santana Ríos). La misma se extendió hasta horas de la tarde. Decretado un receso y reanudado el caso a las 2:55 de la tarde, la Lcda. Margie Báez López, Procuradora de Asuntos de la Familia, en representación del Ministerio Público y como defensora judicial de la señora Negrón, informó al tribunal que había sido emplazada en relación a una demanda sometida por la señora Méndez, representada por el licenciado Irizarry. En el pleito se incluyeron como codemandados a la Juez Santana Ríos, la señorita Fuster, al Tribunal General de Justicia y al Departamento de Justicia, entre otros. Conforme surge de la transcripción de la vista, la discusión de este asunto ocupó el resto de la tarde. Por su parte, el licenciado Pijuán expresó desconocer el contenido de la reclamación a la que se estaba haciendo referencia.

---

[54] De los documentos que constan en autos no surge sobre qué incidente versó la vista celebrada el 11 de diciembre de 2012. La única incidencia que aparece en el expediente y que hace referencia a una orden emitida el 12 de diciembre de 2012, es una Resolución con fecha 20 de mayo de 2013 donde entre otras cosas, el tribunal de instancia ordenó a la señora Negrón consignar un dinero proveniente de las rentas de la propiedad de su madre; preparar informe de ingresos y gastos; así como entregar documentos personales e identidad de su progenitora. Querella, Ap. 267.

El foro de instancia citó a la señorita Fuster esa misma tarde. El asunto sobre la pertinencia de su testimonio estuvo ante la consideración de la Juez González Segarra. Cabe destacar que el licenciado Pijuán, quien firmó junto al Querellado la moción solicitando la comparecencia de la testigo, indicó nunca haberse comunicado con ésta previamente, por lo que el tribunal le permitió que la entrevistara ese día. Luego del interrogatorio a la señorita Fuster, la Juez González Segarra denegó la petición en cuestión, por falta de pertinencia o necesidad.

El 17 de mayo de 2013, a petición del Lcdo. Pablo Colón Santiago, representante legal del señor Méndez, el foro de instancia ordenó elevar los autos del caso para que este Tribunal pasara juicio sobre la conducta ética de los licenciados Irizarry y Pijuán, quienes firmaron y certificaron los escritos mencionados.

Varios días después, el 22 de mayo de 2013 la señora Méndez, pese a que contaba con representación legal, presentó un escrito por derecho propio en el que pidió la recusación de las juezas Cortés González, Santana Ríos y González Segarra. Cabe señalar que el documento exhibe el mismo formato, letra y redacción que empleó el Querellado en sus escritos previos, incluyendo en el que solicitó la comparecencia de la señorita Fuster como testigo y la recusación de la Juez Santana Ríos. Considerados los

argumentos de las partes, ese mismo día el foro de instancia denegó la petición por carecer de fundamentos.

**II**

El proceder ético de los abogados, como oficiales de este Tribunal, está impregnado de un alto interés público. *In re* Rodríguez Vázquez, 176 DPR 168 (2009); *In re* Pujol Thompson, 171 DPR 683 (2007). La abogacía ostenta un rol social importante en la realización de la justicia. *In re Pujol Thompson*, *supra*. Cónsono con lo anterior, el Código de Ética Profesional, 4 LPRA Ap. IX, Art. 1 *et seq.* (2012) (Código de Ética Profesional), establece las pautas mínimas de conducta que rigen la práctica de la profesión legal en Puerto Rico. *In re* Vera Vélez, 2015 TSPR 7, 192 DPR ___ (2015); *In re* Guemárez Santiago, 2014 TSPR 112, 191 DPR ___ (2014); *In re* Rodríguez Vázquez, *supra*; *In re* Nogueras Cartagena, 150 DPR 667, 674 (2000). Además, le impone a nuestra clase togada la obligación de actuar a un nivel superior, y nunca al margen del mismo. *In re* Rodríguez Vázquez, *supra*; *In re* Nogueras Cartagena, *supra*.

Por la función social que ejercen, la responsabilidad profesional de los abogados no está ceñida a sus clientes. Éstos responden, además, a sus colegas, a la ciudadanía y a la administración de la justicia. *In re* Pujol Thompson, *supra*. Los enunciados del Código de Ética Profesional pretenden propiciar que los juristas se desempeñen, personal y profesionalmente, acorde a los más altos principios de conducta decorosa para beneficio de la

profesión, de la sociedad y de las instituciones de justicia del País. Íd.

## A. Canon 9: Conducta del Abogado ante los Tribunales

El Canon 9 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 9 (2012) (Canon 9), establece el estándar de conducta de los miembros de la profesión legal hacia el Poder Judicial. En esencia, este principio ético exige al abogado un deber de respeto constante para con los tribunales. *In re* López Montalvo, 173 DPR 193 (2008). Comprende, además, la responsabilidad de cada miembro de la profesión de velar la calidad de la justicia en nuestros tribunales y de intervenir a fin de mantener el curso adecuado de los procesos judiciales y la sana administración de la justicia. Canon 9. *In re* López Montalvo, *supra*.

La naturaleza de la función de los profesionales de la abogacía en la sociedad demanda una escrupulosa atención y obediencia a los decretos judiciales. *In re* Fontánez Fontánez, 181 DPR 407 (2011); *In re* Dávila Toro, 179 DPR 833 (2010). Lo que implica atenderlos con gran diligencia y seriedad. *In re* Rosa Rosa, 183 DPR 759 (2011). Lo contrario mina la confianza pública en nuestro sistema de justicia. *In re* Colón Rivera, 170 DPR 440 (2007). A tono con lo anterior, hemos interpretado que incumplir con las órdenes o requerimientos de los tribunales quebranta el compromiso de respeto y decoro que cada abogado debe al foro judicial. *In re* Gaetán y

<u>Mejías</u>, 180 DPR 846 (2011). Este deber es particularmente relevante en los asuntos éticos. *In re* <u>Colón Rivera</u>, *supra*.

Desatender las órdenes de esta Curia supone la imposición de sanciones disciplinarias severas. *In re* <u>Torres Viera</u>, 179 DPR 868 (2010). Esto incluye la renuencia a cumplir con los requerimientos de los organismos a los que delegamos la labor de investigar posibles infracciones a las normas que rigen la profesión. <u>Íd.</u> Evidentemente, lo anterior acarrea una falta independiente a los méritos propios de la queja presentada en contra de un abogado. *In re* <u>Colón Rivera</u>, *supra*. Como corolario, hemos sido consistentes en suspender inmediata e indefinidamente de la práctica de la profesión a los miembros que exhiben una actitud displicente que menosprecia la autoridad de esta Curia. *In re* <u>Vera Vélez</u>, *supra*; *In re* <u>Torres Viera</u>, *supra*.

La deferencia exigida por el Canon 9 no está limitada a la conducta y expresión del abogado en sala. *In re* <u>López Montalvo</u>, *supra*. Es un estándar ético que debe permear, incluso, en el lenguaje plasmado en los escritos judiciales. <u>Íd.</u> Véase, además, *In re* <u>Andréu Ribas</u>, 81 DPR 90 (1959). Vale destacar que " '[e]l abogado no tiene licencia absoluta en el uso del lenguaje para poner en entredicho o mancillar la dignidad de los jueces.' " (Corchete en el original). *In re* <u>López de Victoria I</u>, 163 DPR 1, 8 (2004), citando a *In re* <u>Cardona Álvarez</u>, 116 DPR

895, 906-907 (1986). Véase, además, *In re* Rochet Santoro, 174 DPR 123, 131 (2008). "[E]s nefasto para la buena práctica de la profesión que un abogado o abogada haga serias imputaciones sobre el obrar de un juez o de una jueza cuando las mismas no están avaladas por evidencia contundente e indubitada". *In re* Gaetán y Mejías, *supra*, pág. 862; *In re* López de Victoria I, *supra*, pág. 8.

El jurista que en sus expresiones orales o escritas recurra al uso impropio, irrespetuoso y ofensivo del lenguaje, en lugar de utilizar un argumento persuasivo, no solo atenta contra la solemnidad y respeto que debe a los tribunales, sino que exhibe escasa competencia profesional. *In re* Pagán Hernández, 105 DPR 796 (1977); De Latorre v. Alcalde de Carolina, 104 DPR 523 (1976). Véase, además, *In re* Markus, 158 DPR 881 (2003). El abogado, en el ejercicio de sus funciones, tiene el derecho y la responsabilidad de defender los intereses de sus clientes, pero sin mancillar la institución de la judicatura, ni sus miembros o funcionarios. *In re* Pagán, 116 DPR 107 (1985). Véase, además, *In re* Markus, *supra*. El abogado tiene el deber de preservar y promover la imagen de la justicia. *In re* Markus, *supra*. " 'La estatura moral e intelectual inherente al ejercicio de la abogacía impone un debate jurídico libre de personalismos y posiciones subjetivas que lo degraden […]' ". *In re* Pagán, *supra*, pág. 111, citando a García Santiago v. Acosta, 104 DPR 321, 323 (1975).

### B. Canon 12: Puntualidad y Tramitación de las Causas

El Canon 12 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 12 (2012) (Canon 12), dispone que existe una obligación del abogado para con el tribunal, sus colegas, las partes y los testigos de ser puntual en su asistencia y conciso en el trámite y presentación de los casos. Íd. Véase, además, *In re De León Rodríguez*, 190 DPR 378 (2014). Este precepto persigue evitar demoras indebidas en la tramitación y solución de las causas que impactan negativamente a las partes y al sistema de justicia. Canon 12. Solo procede solicitar la suspensión de un procedimiento, cuando existan razones suficientes y resulte indispensable para salvaguardar los derechos de los clientes. Íd.

Este postulado que rige la práctica de la profesión impone a los abogados la responsabilidad de cumplir con todas las gestiones legales encomendadas para evitar entorpecer el curso y solución de un pleito. *In re Díaz Nieves et als.*, 189 DPR 1000 (2013). Este deber se extiende a todas las etapas de un litigio. De conformidad al mismo, hemos recalcado que las acciones de un miembro de la profesión no deben comprometer los derechos de su cliente, ni los resultados del pleito. Íd. Como funcionarios del tribunal, los abogados están llamados a asistirle en su objetivo de hacer justicia rápida y económica. *In re Fontánez Fontánez*, *supra*; *In re Flores Ayffán I*, 170 DPR 126 (2007). "Así, el comportamiento de

todo abogado debe descansar en 'el fiel cumplimiento de la ley y el respeto al [P]oder [J]udicial' ". *In re* Díaz Nieves *et als.*, *supra*, pág. 1009, citando a *In re* Nieves Nieves, 181 DPR 25, 36 (2011); *In re* Rosa Rosa, *supra*, pág. 766.

"Un abogado no tiene la discreción para decidir a qué vistas comparece o no; esto le compete al tribunal. [L]os señalamientos conflictivos no son razones válidas para suspender y posponer vistas que han sido señaladas con tiempo". *In re* De León Rodríguez, *supra*, págs. 391-392; *In re* León Malavé, 172 DPR 1036, 1043 (2008). La incomparecencia de un abogado a una instancia procesal, debidamente citada y notificada, evidencia falta de respeto e irresponsabilidad hacia las partes y al foro. *In re* León Malavé, *supra*.

En síntesis, viola este canon todo miembro de la profesión legal que cause confusiones innecesarias y obstaculice el proceso judicial. *In re* Hernández Vázquez, 180 DPR 527 (2010). La continua desobediencia de las órdenes judiciales dificulta el trámite de un asunto, afectando a las partes y a la sana administración de la justicia. *In re* De León Rodríguez, *supra*.

### C. Canon 17: Litigios Injustificados

El Canon 17 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 17 (2012) (Canon 17), trata sobre los litigios frívolos o injustificados. En esencia, prohíbe al abogado iniciar procesos judiciales a favor de su cliente cuando

esté convencido que a través de éstos se pretende molestar, hostigar y perjudicar a la parte adversa. Íd. Véase, además, *In re* Salas Arana, 188 DPR 339 (2013). Establece, de otra parte, que la comparecencia de un abogado ante el tribunal equivale a una afirmación sobre su honor, de que a su juicio, el caso de su cliente es digno de un remedio judicial. Canon 17. Finalmente, dispone que al suscribir un escrito judicial, el abogado certifica que lo leyó y que, conforme a su juicio, información y conocimiento, está bien fundado. *In re* Guemárez Santiago, *supra*; *In re* Guzmán Guzmán, 181 DPR 495, 509 (2001).

De acuerdo a la discusión anterior, este Tribunal ha interpretado que un abogado viola esta obligación cuando insta una reclamación, sin contar con la prueba necesaria para sustentar sus alegaciones. *In re* Guemárez Santiago, *supra*; *In re* Flores Ayffán I, *supra*. Igualmente, infringe este postulado ético el abogado que durante el transcurso de un pleito quede persuadido de que el mismo es injustificado y no se lo informe al cliente, ni presente su renuncia formal para la consideración del foro judicial. *In re* Flores Ayffán I, *supra*.

### D. Canon 26: Derechos y Limitaciones en Relación con Clientes

El Canon 26 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 26 (2012) (Canon 26), establece que ─de ordinario─ ningún miembro de la profesión legal está

obligado a representar a determinado cliente. Íd. A éste le asiste el derecho de aceptar o rechazar la representación profesional, siguiendo el mandato de su conciencia y no el de su representado. Canon 26; *In re* Zayas Nieves, 181 DPR 49 (2011); *In re* León Malavé, *supra*. Por ello, le está prohibido aconsejar transacciones, actos contrarios a la ley, entablar pleitos viciosos e instigar falsas defensas, aduciendo que lo hizo siguiendo las instrucciones del cliente. Canon 26.

**E. Canon 35: Sinceridad y Honradez**

El Canon 35 del cuerpo normativo de referencia, 4 LPRA Ap. IX, C. 35 (2012) (Canon 35), impone a todo abogado un deber general de sinceridad y honradez ante los tribunales, para con sus compañeros y clientes. Íd. No es sincero ni honrado utilizar medios incompatibles con la verdad, ni inducir a error al tribunal con artificios o haciendo una relación falsa de los hechos o del derecho. Canon 35; *In re* Salas Arana, *supra*. La verdad es un valor ético trascendental, intrínseco a la abogacía, sin el cual "la profesión jurídica no podría justificar su existencia". *In re* Santiago Tirado, 173 DPR 786, 793 (2008). Véase, además, *In re* Sierra Arce, 2014 TSPR 142, pág. 10, 192 DPR ___ (2014).

El ejercicio de la profesión legal "está predicad[o] en la búsqueda y defensa de la verdad". *In re* Sierra Arce, *supra*, pág. 10; *In re* Santiago Tirado, *supra*, pág. 793. De manera que resulta contrario a su función el que

un miembro de la abogacía se aparte de su deber inherente de sinceridad y honradez en todo aspecto en el que se desempeñe, sea su vida privada o profesional. *In re Sierra Arce*, *supra*.

El compromiso de cada miembro de la profesión con la verdad es incondicional. *In re Santiago Tirado*, *supra*. Por lo que un abogado que no proceda a tenor de este principio ético, incumple el Canon 35, aunque no medie intención o motivo alguno, no provoque daño a un tercero, ni actúe de mala fe. *In re Salas Arana*, *supra*; *In re Santiago Tirado*, *supra*. Estas circunstancias son sólo pertinentes al momento de ponderar la sanción disciplinaria correspondiente al abogado. *In re Salas Arana*, *supra*.

**F. Canon 38: Preservación del Honor y Dignidad de la Profesión**

Finalmente, el Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38 (2012) (Canon 38), exige a los abogados preservar el honor y la dignidad de la profesión que representan, aunque ello suponga sacrificios personales. "Comportarse a la altura de los principios éticos reseñados constituye piedra angular en la confianza que genera el hecho de pertenecer a esta ilustre profesión". *In re Sierra Arce*, *supra*, pág. 11. La conducta del abogado no se evalúa con el mismo rigor, ni con los mismos parámetros que la de un sujeto particular. Íd. La función social que ejerce y la

institución que representa, demanda que se desempeñe con el más alto sentido de responsabilidad profesional y ética en todas la facetas de su vida. *Íd.*; *In re* Rodríguez Vázquez, *supra*. En vista de lo anterior, los juristas deben ser conscientes que cada uno de ellos "es un espejo en que se refleja la imagen de la profesión". *In re* Sierra Arce, *supra*; *In re* De León Rodríguez, *supra*, pág. 393; *In re* Rodríguez Vázquez, *supra*. Constituyen la imagen misma de todo el andamiaje judicial y del valor de la justicia.

En lo pertinente, el Canon 38 ordena, incluso, evitar la apariencia de conducta impropia. Canon 38. Respecto a este deber, hemos colegido que la confianza, respeto e imagen que la sociedad deposita en cada uno de los abogados, en la profesión y en la institución de la justicia desmerece cuando la actuación del jurista representa incorrección. *In re* Sierra Arce, *supra*.

## G. Comisionado Especial

La Regla 14(h) del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, R. 14(h) (2012 y Supl. 2014) (Regla 14(h)), introduce la figura del Comisionado Especial a los procesos disciplinarios. Esta disposición reglamentaria nos concede discreción para nombrar a un Comisionado, quien tendrá la responsabilidad de celebrar las vistas, recibir la prueba, dirimir la evidencia conflictiva y rendir un informe con sus determinaciones fácticas. Regla 14(h); *In re* Salas Arana, *supra*; *In re* Torres Delgado, 150

DPR 849 (2000). Contamos con la facultad de adoptar, modificar o hasta rechazar el informe de un Comisionado. *In re* Salas Arana, *supra*; *In re* Guzmán Guzmán, *supra*, pág. 511. Ya que ejerce una función similar a la de un juzgador de hechos al aquilatar la prueba y adjudicar la credibilidad, de ordinario, sus determinaciones gozan de nuestra deferencia, salvo que medie pasión, error manifiesto, prejuicio o parcialidad. *Íd.*; *In re* Vera Vélez, *supra*; *In re* Sierra Arce, *supra*. Existe una salvedad importante:

> [N]uestra deferencia se limita a situaciones en las que esos hallazgos descansan en prueba testifical, ya que es entonces cuando, similar al juez de instancia, el Comisionado Especial tiene la ventaja de poder aquilatar de primera mano la credibilidad de los testigos. Por el contrario, cuando sus determinaciones están apoyadas en prueba documental que forma parte del expediente, nos encontramos en igual posición que el Comisionado Especial para evaluarla […]". (Citas omitidas). *In re* Arce Sierra, *supra*, pág. 9; *In re* De León Rodríguez, *supra*, pág. 394.

En vista de que un procedimiento disciplinario contra un abogado puede acarrear la pérdida de su título profesional, afectándose su derecho fundamental a ganarse el sustento, la carga probatoria es mayor a la requerida en los procesos civiles. *In re* Salas Arana, *supra*; *In re* Caratini Alvarado, 153 DPR 575 (2001). El *quantum* de prueba aplicable a los procedimientos éticos contra los miembros de la profesión legal es el de prueba clara, robusta y convincente, no afectado por reglas de exclusión ni a base de conjeturas. *In re* Salas Arana, *supra*; *In re* Fontánez Fontánez, *supra*; *In re* Caratini Alvarado, *supra*. " 'Aun cuando no se puede definir de manera precisa, la

prueba clara, robusta y convincente ha sido descrita como aquella evidencia que produce en un juzgador de hechos una convicción duradera de [que las] contenciones fácticas son altamente probables' ". (Corchetes en original). *In re Salas Arana, supra*, pág. 347, citando a *In re* Irizarry Vega, 176 DPR 241, 246 (2009). Véase, también, *In re* Fontánez Fontánez, *supra*, págs. 417-418.

### H. Sanción Disciplinaria

El proceso disciplinario, más allá de condenar la conducta antiética del abogado, pretende proteger la integridad de la profesión legal y a la sociedad. *In re* Santiago Tirado, *supra*. Al imponer la sanción disciplinaria correspondiente, es importante ponderar, entre otros, los siguientes factores: 1) la reputación del abogado en la comunidad; 2) su historial; 3) si es su primera falta, 4) si ninguna parte ha sido perjudicada con su proceder; 5) la aceptación de la falta y su arrepentimiento; 6) si es un comportamiento aislado; y 7) cualquier otra consideración, ya sea atenuante o como agravante, que surja de los hechos particulares del caso. *In re* Reyes Coreano, 190 DPR 739 (2014); *In re* Díaz Nieves *et als.*, *supra.* Ninguno de estos criterios es de por sí determinante para decidir la reprimenda a imponer.

### III

Conforme a lo anterior, queda claro que el Querellado colaboró y promovió, en unión a otras personas, una serie de quejas y demandas contra funcionarios públicos

relacionadas a las causas en las que era parte. <u>En total se iniciaron sobre catorce pleitos y más de 53 quejas que impactaron cerca de la mitad de las regiones judiciales de la Isla</u>.**55**

La mayoría de las quejas alegaron violaciones éticas apoyadas en las decisiones que los funcionarios judiciales tomaron en el descargo oficial de sus labores. Por este medio se cuestionaron, entre otras cosas, los méritos de las determinaciones judiciales y se exigió el desaforo de los abogados y/o jueces, su arresto y hasta la prohibición de su salida de Puerto Rico. De igual modo, las demandas

---

**55**    Según surge de la Resolución emitida por este Tribunal el 18 de junio de 2013 en la Queja AB-2013-98, entre el Querellado, sus padres, el señor Román y el licenciado García han demandado a: <u>17 jueces, 1 Oficial Examinadora de Pensiones Alimentarias, 1 Secretaria Regional, 4 Secretarias Auxiliares, 1 Trabajadora Social, a la Oficina de Administración de Tribunales, junto con su Directora, al Tribunal General de Justicia, al Tribunal de Primera Instancia y al anterior Juez Presidente de este Tribunal</u>.

Véanse, por ejemplo, los siguientes casos:

1) Caso Civil Núm. JDP2012-0462 — Acción en daños y perjuicios presentada el 22 de octubre de 2012 en contra del Gobierno de Puerto Rico, el Tribunal General de Justicia, la Oficina de Administración de los Tribunales y su Directora, el Juez Presidente del Tribunal Supremo, Hon. Federico Hernández Denton, los jueces Hon. Aixa Rosado Pietri, Jueza Administradora del Centro Judicial de Mayagüez, Hon. Angie Acosta Irizarry, Hon. Lynette Ortiz Martínez, Hon. Marta L. Marchany Justiniano, Hon. Edwin R. Troche Nieves, y las señoras Marnard Morales Román y Ángela Santiago Rodríguez, ambas secretarias auxiliares. Queja, Anejo 11.

2) Acción civil en daños contra la Lcda. Kianí Rodríguez Hernández, Oficial Examinadora de Pensiones Alimentarias;

3) Caso Civil Núm. JPE2012-0682 sobre *Mandamus* contra la Sra. Evelyn Casasnovas Maldonado, Secretaria Regional de Ponce. Este caso fue presentado originalmente en la Región de Ponce y, posteriormente, trasladado a la Sala Superior de Guayama (GPE2012-0135);

4) Caso Civil Núm. ISCI201301394 — Acción sobre daños y perjuicios contra la Hon. Lucy I. Rivera Doncell presentado en la Región de Mayagüez. Posteriormente, trasladado a la Región de Arecibo (CDP2014-028);

5) Caso Civil Núm. JDP2012-0393 — Acción de daños contra el Hon. Luis Vélez Vélez presentado en la Región de Ponce y, posteriormente, trasladado a la Región de Guayama (GDP2012-0154);

6) Caso Civil Núm. JDP2012-0382 — Acción de daños contra la ex jueza Imghard del Toro Morales presentada en la Región de Ponce.

7)

interpuestas contra estos funcionarios esencialmente impugnaron el trámite y la corrección de los mismos asuntos.

## A. Canon 9

Luego de examinar detenidamente las determinaciones de hechos de la Comisionada Especial, conjuntamente con la abundante prueba documental sobre los asuntos relacionados, concluimos que existe prueba clara, robusta y convincente de que el licenciado Irizarry faltó al Canon 9. En múltiples ocasiones el abogado desplegó una conducta desafiante hacia varios integrantes de la judicatura. Tanto en sus expresiones en corte abierta como en sus escritos empleó un lenguaje ofensivo contra la Querellante, los jueces que intervinieron en los casos pendientes entre él y su expareja, los funcionarios judiciales, así como los compañeros abogados que representaron intereses adversos a los suyos.

Cabe destacar, que el Querellado dirigió una serie de imputaciones éticas y delictivas totalmente frívolas hacia jueces, procuradoras, abogados y personal judicial. Elaboró un esquema de recusaciones infundadas contra los magistrados asignados a los asuntos que le concernían. Tan pronto éstos adjudicaban algún asunto en su contra, en lugar de cuestionar los méritos de la controversia mediante el trámite dispuesto en nuestro ordenamiento procesal y apelativo, solicitaba la exclusión del juzgador sin sustentar su solicitud conforme a derecho. Véase *In*

*re* Pagán, *supra*. Cuando no lograba su recusación, interponía entonces pleitos civiles y/o quejas frívolas en contra de éstos para conseguir de este modo su inhibición.

El licenciado Irizarry solicitó la recusación de cerca de ocho jueces y oficiales judiciales. No conforme con esto, instó o promovió sobre catorce demandas y más de cincuenta quejas éticas, que afectaron, igualmente, jueces, abogados, fiscales y otros funcionarios que tuvieron injerencia en alguno de los procesos en los que participó. Existe prueba suficiente para colegir que el Querellado, junto a sus padres y a otras dos personas cercanas a él, abusaron no tan sólo de los trámites judiciales, sino además de los procesos disciplinarios.[56] Así por ejemplo, como previamente mencionamos, solamente contra el licenciado Maldonado, abogado de la señora Rodríguez, se presentaron un total de 16 quejas en un periodo de poco más de tres meses.

La práctica de intimidar y presionar a jueces mediante la presentación de recusaciones y quejas infundadas evidencia los elementos de la figura conocida

---

[56]     Nos referimos al licenciado García y al señor Román. Este último presentó cinco quejas contra el Lcdo. Martín González Vázquez. El licenciado González Vázquez fue el representante legal de la Querellante y del licenciado Maldonado en el Caso Civil Núm. LDP2013-0002, sobre Delito y Fraude de Ley, que presentara el licenciado Irizarry, su hermano y sus padres contra éstos en el Tribunal de Primera Instancia, Sala Superior de Utuado. Posteriormente, el caso fue trasladado a la Región de Ponce bajo el Núm. JDP2013-193.

Las quejas presentadas contra el letrado fueron atendidas, consolidadas y archivadas en *In re* González Vázquez, 189 DPR 817 (2013). Como consecuencia, este Tribunal le impuso una sanción de $5,000.00 al señor Román por la presentación de quejas frívolas contra el letrado. Íd., pág. 821.

como "judge shopping".[57]    La actuación impropia del Querellado estaba claramente dirigida a buscar un juzgador que le favoreciera en las causas en que intervino.   De esta manera, el licenciado Irizarry afrentó la integridad, imparcialidad y confianza pública inherente a nuestro sistema judicial.

De otra parte, el licenciado Irizarry exhibió un hábito de indiferencia a las órdenes y decretos judiciales, incluyendo los trámites éticos.   En más de una ocasión, desatendió las órdenes de la Comisionada.   El Querellado no justificó su incomparecencia a la primera conferencia señalada por la funcionaria.   Nunca presentó la evidencia ofrecida para acreditar uno de los supuestos señalamientos conflictivos, ni hizo las gestiones pertinentes para presentar el informe entre abogados que le fuese requerido.   De las minutas, asimismo se desprende que el licenciado Irizarry arribó tarde a dos de las audiencias pautadas por la Comisionada, con el pretexto de la distancia o el tráfico vehicular.   Incumplió, también, con la obligación de someter, oportunamente, su argumento final,[58] así como su objeción al Informe de la Comisionada. El Querellado olvidó que las funciones de esta oficial

---

[57]    Esta modalidad del "*forum shopping*" se configura cuando una parte persigue manipular la identidad del juzgador a su favor.   K.J. Norwood, Shopping for a Venue:  The Need for More Limits on Choice, 50 U. Miami L. Rev. 267, 268-269 (1995-1996).   El propósito principal de evitar la práctica del "*judge shopping*" es asegurar el principio de imparcialidad al que aspira todo sistema de justicia en la figura del juez.   Íd., págs. 292-295 y 300-301.

[58]    El licenciado Irizarry presentó su argumentación el 8 de mayo de 2013, a pesar de que se le había concedido hasta el 28 de abril de 2013 para presentarlo.

judicial son delegadas por este Tribunal, por lo que desacatar sus órdenes, como efectivamente hizo, equivale a desacatar nuestras órdenes y representa una afrenta separada a las imputadas previamente.

En repetidas ocasiones desacató las órdenes de los tribunales de instancia. Entre otros incidentes, no asistió a vistas señaladas en los casos sobre *Orden de Protección* (Civil Núm. JAOP2012-0448) y Ley Núm. 140 (Civil Núm. Q12-128 y Q12-157); no acató la orden de comparecer representado por un abogado en los casos consolidados sobre Alimentos y Custodia (Civil Núm. ISRF201200854 y ISRF201201461); incumplió con el pago por concepto de alimentos a favor de la Menor; y contravino un mandato judicial al negarle a la Querellante el acceso a sus pertenencias.

Todo lo anterior nos lleva forzosamente a concluir, que con su patrón de conducta el Querellado afectó el decoro, orden y la sana administración del sistema judicial. Asimismo, la actuación del letrado puso en entredicho la integridad, honor y competencia de múltiples funcionarios de la judicatura. Además, mancilló la imagen de los tribunales, como institución al servicio de la justicia.

### B. Canon 12

La conducta antes descrita obstaculizó, de igual modo, el trámite y solución de cada uno de los casos en los que el licenciado Irizarry intervino como parte y/o

abogado. En los asuntos consolidados sobre Incapacidad y Tutela (Casos Núm. JJV2012-0817 y JJV2012-0981), referidos a la atención de esta Curia, el Querellado —como representante legal de uno de los peticionarios— utilizó estrategias y tácticas de litigación antiéticas e impropias que dilataron el curso del pleito, tales como: intentar unirse a la representación legal de uno de los peticionarios y requerir la citación de la hija de la juez que presidía la controversia, a quién había demandado previamente, con el evidente propósito de inhabilitarla de sus funciones adjudicativas en esa acción.

Asimismo, dificultó la solución de las controversias y afectó la administración de la justicia, al solicitar la recusación y al demandar a los jueces a cargo de los casos sobre *Orden de Protección* y los casos consolidados sobre Alimentos y Custodia, sin contar con fundamento alguno. Entorpeció el trámite de estas mismas causas, al permitir la comparecencia de personas ajenas a las controversias y al presentar escritos repetidos y redundantes sobre asuntos previamente sometidos a la consideración de los foros. Finalmente, impidió el desarrollo de los procesos al procurar, a través de múltiples gestiones, el favor de los tribunales y/o juzgadores a sus propios intereses. Véase K.J. Norwood, Shopping for a Venue: The Need for More Limits on Choice, 50 U. Miami L. Rev. 267 (1995-1996).

Esta práctica de litigación del licenciado Irizarry conocida como "forum shopping" fue utilizada como subterfugio cuando: en lugar de presentar una solicitud de custodia en el foro de instancia en el que se ventilaba la acción de Alimentos en su contra, inició un recurso extraordinario de *Habeas Corpus* en una región judicial distinta a la que tenía jurisdicción sobre un aspecto íntimamente relacionado con la acción; interpuso demandas contra el licenciado Maldonado en Ponce y Utuado; solicitó el traslado de los casos consolidados sobre Alimentos y custodia, imputándole conducta impropia a una juez; y repetidamente pidió recusar a los jueces a cargo de los casos, con la única intención de lograr la adjudicación de las causas a su favor.

Dada su naturaleza, los asuntos reseñados requerían el más alto grado de cuidado, atención y diligencia del letrado. Su conducta afectó asuntos tan apremiantes, como: 1) el bienestar de la Menor en la controversia sobre Alimentos y Custodia; 2) la seguridad de la señora Rodríguez en el caso que versó sobre *Orden de Protección*; y 3) los derechos de la persona incapacitada en el asunto de Incapacidad y Tutela. En la controversia sobre Ley Núm. 140, la conducta obstinada del Querellado obligó a la señora Rodríguez a presentar una segunda petición para lograr acceso, tanto a sus pertenencias como a las de su hija, AIIR.

El licenciado Irizarry develó un patrón de conducta perjudicial al trámite de las causas al arribar tarde a varias de las incidencias procesales y al eludir varios señalamientos, incluyendo uno de los pautados por la Comisionada designada. Por esta razón, nos vemos en la necesidad de reiterar que los abogados de Puerto Rico, no tienen discreción alguna para determinar a qué instancias judiciales o administrativas asistir, siempre y cuando hayan sido citados y notificados conforme a derecho. *In re León Malavé*, *supra*. Esta es una facultad reservada a los recintos judiciales y/o administrativos. Lo contrario, además de constituir una falta de respeto al foro adjudicativo, afecta el proceso e impone una carga adicional a las partes y al sistema judicial.

Resolvemos, por lo tanto, que existe prueba clara, robusta y convincente de que el licenciado Irizarry interfirió con el funcionamiento adecuado de los tribunales, impidiendo así la solución justa, rápida y económica de las controversias judiciales. Con su modo de obrar, impactó negativamente el derecho de las partes a la disposición expedita de sus causas. Consiguientemente, concluimos que el proceder del Querellado fue contrario a lo dispuesto en el Canon 12.

### C. Canon 17

De la prueba documental surge que el Querellado violó el Canon 17. Éste, actuando por sí y como representante legal de sus padres, del señor Román y del licenciado

García, inició y promovió acciones judiciales frívolas e injustificadas, con la única intención de molestar, hostigar y ocasionar daño a la Querellante, a su abogado y a todo funcionario que interviniera en alguna controversia a favor de su expareja. Desplegó en los tribunales una actitud revanchista y amenazante que, entre otras cosas, procuró minar los intereses de la señora Rodríguez.

Con excepción de una ocasión, todas las solicitudes de recusación a jueces fueron denegadas. En estos escritos y en las reclamaciones subsiguientes en daños y perjuicios consignó aseveraciones falsas, sin tener derecho al remedio solicitado, ni bases razonables sobre las cuales fundamentarlas. De la misma manera actuó: al afirmar en un recurso de *Habeas Corpus* que su hija estaba secuestrada; al solicitar una orden de protección a favor de su hija, sin base para ello; al entablar una acción de secuestro parental o "*Parental Kidnapping*" con información falsa; al insistir en solicitar información confidencial en el caso sobre *Orden de Protección*; al alegar que la hija de la juez que presidía el caso sobre Incapacidad y Tutela, era testigo en el mismo; al solicitar la descalificación del abogado de la señora Rodríguez, con imputaciones falsas de delito, entre otras.

No albergamos duda de que el licenciado Irizarry abusó de los procesos y recursos judiciales, promoviendo reclamaciones frívolas e inmeritorias que le permitieran

controlar el curso y adjudicación de los casos a su antojo.

### D. Canon 26

Aunque al asumir la representación profesional el abogado tiene la obligación de adelantar y defender los intereses de su cliente con gran celo, sus actuaciones están ceñidas al marco de la ética y de la ley. *In re León Malavé*, *supra*, pág. 1045. La prueba nos permite inferir que el licenciado Irizarry aconsejó a sus padres y a otras personas a promover reclamaciones e intervenciones judiciales viciosas, dirigidas por su ánimo personal y el de sus representados.[59] Aunque el licenciado Irizarry ha formulado una serie de defensas para justificar las actuaciones propias, las de sus padres y amigos en contra de la Querellante, jueces, abogados y otros funcionarios del tribunal, las mismas resultan irrazonables e infundadas.

El Querellado, entre otras, adujo que: existía un complot en su contra por parte del Tribunal General de Justicia de Puerto Rico y de todos sus componentes; cada una de sus actuaciones o defensas están provistas en nuestro ordenamiento para todo litigante, por lo que, tanto él como sus representados, están en todo su derecho de así plantearlas; y que todo lo hizo por su hija, AIIR.

---

[59]    Ya habíamos advertido la delicada situación que se produce cuando un abogado representa intereses personales y familiares, sobre todo cuando prevalece la animosidad entre las partes. **"[E]xisten pleitos en que se conjugan factores subjetivos muy poderosos que transportan la animosidad de las partes al ámbito judicial […]"**. (Citas omitidas y énfasis nuestro). *In re* Salas Arana, *supra*, pág. 350.

A pesar de su inconformidad con las múltiples determinaciones adversas, el licenciado Irizarry acudió en una sola ocasión ante el Tribunal de Apelaciones, interponiendo dos recursos idénticos de *certiorari*. Sin embargo, queremos enfatizar que un posible error de un tribunal no constituye fundamento alguno para atacar, deshonrar y desafiar al foro judicial, tal y como lo hizo el Querellado.

Por otro lado, permitir la intervención de personas ajenas a los pleitos, particularmente en el contexto en que se configuraron las diversas participaciones de estas personas, constituye negligencia en su gestión como profesional del derecho. Así quedó comprobado cuando promovió intervenciones improcedentes de sus padres, hermano y otras dos personas en los casos sobre *Orden de Protección* (Caso Civil Núm. JAOP2012-0448), Alimentos y Custodia (Casos Núm. ISRF201200854 e ISRF201201461).

Por consiguiente, concluimos que existe evidencia clara, robusta y convincente para sostener que la conducta del Querellado en relación con sus clientes sobrepasó los confines éticos, infringiendo así el Canon 26.

### E. Canon 35

La conducta del Querellado no se ajustó al deber general de sinceridad y honradez que impregna la práctica de la profesión, conforme al Canon 35. Insistimos, que no es sincero ni honrado unirse a un pleito con la deliberada intención de forzar la recusación o inhibición de un juez.

*In re* Marini Román, 165 DPR 801 (2005). Asimismo, es contrario a la verdad iniciar pleitos o hacer intervenciones elaborando una falsa relación de hechos o del derecho. Según consta en autos, el Querellado: promovió un recurso extraordinario de *Habeas Corpus* a sabiendas que la madre de su hija ostentaba su custodia provisional, *In re* Guzmán Guzmán, *supra*; negó su participación en la redacción de una solicitud de recusación presentada por derecho propio por una persona a quien asesoró; intentó descalificar a un compañero abogado con información falsa y desprovista de fundamentos; originó procedimientos éticos infundados contra jueces y abogados; promovió la abstención de adjudicadores y otros funcionarios del tribunal en los casos en que él era parte acusándolos, sin base alguna, de conducta delictiva e impropia; expresó a la Comisionada tener un señalamiento conflictivo que nunca probó; entre otros incidentes.

### F. Canon 38

Con su proceder el licenciado Irizarry incumplió con su deber de exaltar la dignidad y el honor de la profesión legal dispuesto en el Canon 38. A través de sus actos desprestigió el buen nombre de nuestra comunidad legal y el de nuestro sistema de justicia. La puntillosa función social que ejercen los abogados requiere que su conducta esté sujeta a un mayor nivel de rigor que el impuesto a un ciudadano particular. El licenciado Irizarry no interiorizó la gran responsabilidad que ostenta como

representante de la profesión y de la institución judicial. Empleó su título y abusó de los procesos como arma en contra de su expareja, la señora Rodríguez. Antepuso sus intereses y sentimientos personales, olvidando su deber para con los tribunales, sus compañeros y la sociedad. Los hechos demuestran que actuó impropiamente e ignoró sus obligaciones éticas, según impuestas por el Canon 38.

### G. Conclusión

El licenciado Irizarry objetó las determinaciones de hecho medulares en el trámite ético. Lo hizo justificando su proceder y cuestionando en los méritos cada uno de los asuntos adjudicados. Asumió una actitud de negación absoluta ante las infracciones imputadas. Es decir, aunque solicitó disculpas, no reconoció haber infringido el Código de Ética Profesional.

Merece la pena destacar que este caso demandó el análisis de una voluminosa prueba documental que fue integrada como parte del Informe de la Comisionada. De igual manera, la Comisionada tuvo el beneficio de evaluar la credibilidad de las expresiones vertidas por el Querellado durante su testimonio en la Vista Final. Aunque éste intentó rebatir las imputaciones, la Comisionada descartó su versión exculpatoria. A base de ello, concluyó que el licenciado Irizarry infringió los postulados éticos que le fuesen imputados por la Procuradora.

A base de un examen minucioso de los hechos de este caso y de toda la prueba, coincidimos y aceptamos las determinaciones de hechos formuladas por la Comisionada. Cada una de las mismas está avalada por la prueba documental y testifical que la funcionaria tuvo ante su consideración y no hallamos razón alguna para interferir con éstas. Cabe notar que, en su mayoría, las gestiones antiéticas se plasmaron en documentos sometidos en los procesos reseñados. Respecto a los hechos apoyados en prueba testifical, el Querellado no nos demostró error, pasión, prejuicio o parcialidad para descartarlos. El licenciado Irizarry no controvirtió la vasta prueba documental en su contra y, conociendo esto, insistió en defenderse, frívolamente, durante el proceso. Colegimos que existe prueba clara, robusta y convincente que sostiene las faltas a los Cánones 9, 12, 17, 26, 35 y 38 del Código de Ética Profesional, por parte del Querellado.

A tenor con los hechos probados, la Comisionada no reconoció circunstancias atenuantes, más sí agravantes. Coincidimos con su apreciación. Al momento de los incidentes que originaron este proceso, el licenciado Irizarry apenas llevaba dos años admitido a la práctica de la abogacía. En cada uno de los asuntos reseñados, exhibió una conducta irrespetuosa, desafiante e irreverente ante los tribunales. Durante el trámite del asunto ético, éste asumió un proceder similar y nunca expresó arrepentimiento, ni reconoció trasgresión ética

alguna. Todo lo contrario, sostuvo la corrección de sus actos y evidenció una gran indiferencia hacia la facultad disciplinaria de este Foro y de los organismos a los que delegamos algunas de nuestras funciones. Los sucesos relatados no representan una conducta aislada, sino más bien un hábito o patrón de conducta antiética en múltiples dimensiones.

Considerado todos los elementos pertinentes a la sanción, concluimos que el licenciado Irizarry carece del temperamento, la aptitud, la competencia y la estatura ética que se requiere para ejercer la abogacía en nuestra jurisdicción. A tenor de los fundamentos expuestos, procede la suspensión indefinida e inmediata del Querellado de la práctica de la abogacía.

## IV

Por los fundamentos antes expuestos, decretamos la suspensión inmediata e indefinida del Lcdo. Jorge A. Irizarry Rodríguez del ejercicio de la abogacía.

Le ordenamos notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos, e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente. Asimismo, tiene la obligación de acreditar a este Foro el cumplimiento con lo anterior dentro del

término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

Notifíquese personalmente esta Opinión *Per Curiam* al Lcdo. Jorge A. Irizarry Rodríguez por la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Jorge A. Irizarry Rodríguez

CP-2013-0026     Conducta
Profesional

SENTENCIA

En San Juan, Puerto Rico a 26 de agosto de 2015.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, decretamos la suspensión inmediata e indefinida del Lcdo. Jorge A. Irizarry Rodríguez del ejercicio de la abogacía, a partir de la notificación de tal Opinión.

El licenciado Irizarry Rodríguez deberá notificar a todos sus clientes de su inhabilidad para continuar representándolos y devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos, e informar oportunamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente. Asimismo, tiene la obligación de acreditar a este Foro el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de la Opinión *Per Curiam* que antecede y de esta Sentencia.

Notifíquese personalmente la Opinión *Per Curiam* que antecede y esta Sentencia al Lcdo. Jorge A. Irizarry Rodríguez por la Oficina del Alguacil de este Tribunal.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  La Juez Asociada señora Rodríguez Rodríguez no intervino.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo